OLD SECOND NATIONAL BANK OF BAY CITY *v.* ALPENA
COUNTY SAVINGS BANK.[1]

VENDOR AND PURCHASER—LAND CONTRACT—FORFEITURE—WAIVER.
The vendor in a land contract, by filing a bill to foreclose his
vendor's lien, waives the benefit of a prior notice of forfeiture
for default in payments given by him to the vendee.

Appeal from Alpena; Kelley, J. Submitted January
4, 1898. Decided January 18, 1898.

Bill by the Old Second National Bank of Bay City and
Orrin Bump, trustee, against the Alpena County Savings
Bank, Austin W. Mitchell, and John Millen, for the spe-
cific performance of a land contract. From a decree dis-
missing the bill, complainants appeal. Reversed as to de-
fendant bank.

*C. L. Collins*, for complainants.

*J. D. Turnbull*, for defendant bank.

HOOKER, J. On December 8, 1891, Austin W. Mitchell,
being the owner in fee of the premises described in the bill
of complaint, sold them, upon a written executory con-
tract, to Mosher & Son and Alvin Maltby. Prior to their
disposal of their interest, they paid upwards of $90,000 of
the purchase price, besides interest. On October 11, 1895,
Maltby and wife quitclaimed their interest in the premises
to the Old Second National Bank, and on October 15,
1895, Mosher & Son assigned their interest to Bump,
which appears to have been for the benefit of said bank;
and it seems to be understood by counsel that these instru-
ments amounted to an assignment by the vendees of their

[1] Rehearing denied February 16, 1898.

interest in the contract to the bank and Bump, which the learned circuit judge determined was to secure a then existing indebtedness against them of about $22,000, due to the bank. At this time there was about $8,000 remaining unpaid upon the contract, which would mature on January 2, 1896. This was not paid, and on February 3, 1896, Mitchell caused a notice to be served upon the bank. The following is a copy of the substance thereof:

"There having been default made in payment of the amount due under the land contract of date December 8, 1891, between Austin W. Mitchell, as first party, and Alfred Mosher & Son and Alvin Maltby, as second parties, you are hereby notified of the determination of said contract, and that all said second parties' rights therein are declared forfeited and void under the terms thereof.
"AUSTIN W. MITCHELL.
"Dated Cadillac, Mich., February 3, 1896."

The following provisions of the contract should be read in this connection:

"But in case the said parties of the second part, or their legal heirs, representatives, or assigns, shall fail to make the payments aforesaid, or any of them, or any part thereof, punctually, and upon the strict terms, and at the times and places above limited and provided, or shall fail to regularly and seasonably pay and discharge all said taxes and assessments that may hereafter become a lien upon said premises, or any portion thereof, or shall otherwise fail to keep, perform, and fulfill all or any of the promises, agreements, and covenants herein contained, to be kept and performed by the said parties of the second part, then the said party of the first part, or his representatives or assigns, shall have the right, upon 30 days' written notice to said second parties, to treat and consider this contract as abandoned and forfeited by the said parties of the second part; and the said parties of the second part shall forfeit and lose all right and claim under this contract, and be liable to the said party of the first part for damages, and shall thenceforth be deemed mere tenants of the said first party, holding over after expiration of their term, and may be removed from said premises, without notice to quit (which is hereby by said second parties expressly waived), in the same manner as is pro-

vided by law for the removal of a tenant in such case. And it shall be lawful for the said party of the first part, at any time after the violation or nonfulfillment of any of the said agreements on the part of the said parties of the second part, to sell and convey the said land and premises, with the appurtenances, and the said party of the first part shall not be liable in law or equity, in any way or to any person, for damages in consequence of such sale, or to refund any part of the said purchase money or interest which shall have been paid under this contract, and all payments hereon which shall have matured and are due and unpaid at the time of such forfeiture shall not be affected by the same, but shall be paid to the said party of the first part as if no forfeiture had been made. And it is hereby expressly covenanted and agreed that time is and shall be deemed and taken as the very essence of this contract; and that, unless the same shall in all respects be complied with by the said parties of the second part, at the respective times and in the manner herein limited and declared, the said parties of the second part shall lose and be debarred from all rights, remedies, and actions, either in law or equity, upon and under this contract, at the option of the party of the first part.",

About the same time (February 3, 1896), Mitchell's solicitor tendered a deed of the premises to the complainants, and demanded payment of an amount claimed to be due upon the contract. In the interview the liability of the bank was not denied, nor did complainants refuse payment. They did decline to pay at that time, upon the ground that they were entitled to further time, and claimed that under existing circumstances (whatever they may have been) the contract could not be forfeited, and that Mitchell's remedy was by bill in equity. In this Mitchell's counsel seems to have acquiesced, and a bill to foreclose the vendor's lien was filed about the middle of March, 1896. These complainants did not answer until December. Other defendants answered as late as July 1st, and a replication was filed as late as June 4, 1896. Counsel for the complainants asserts that they meditated allowing the case to go to decree, and taking care of their interests by payment, or submitting to sale, as might seem

best. Nothing appears to have been done in that case after July 1, 1896, and it is still pending.

We will now return to some transactions earlier in point of time than these last mentioned. Mosher & Son and Maltby became insolvent about October 15, 1895, and the defendant Alpena Savings Bank commenced an attachment against them, the lands described being attached. This was after the assignment of the contract to the complainants. Early in May, 1896, a quitclaim deed was given by Mitchell of his interest in this land to one O'Brien, a director of the Alpena Savings Bank, who then deeded to the bank, and on the 9th of May complainants' solicitor, who had heard a rumor of this, wrote, upon behalf of the complainants, to the defendant bank, stating their claim, and that they had heard this rumor, asking to be informed whether it was true, and offering to make an exhibit of complainants' proof, to show the priority of their claim over that of the defendant bank, and inviting correspondence with a view to an amicable adjustment of the matter. No answer was made to this, beyond an acknowledgment of its receipt. On or after January 2, 1897, the following letter was received by complainants' solicitor. Its statements do not appear to be disputed:

"CADILLAC, MICH., Jan. 2, 1897.
"C. L. COLLINS, Esq.,
    "Bay City, Mich.
   "*Dear Sir:* Yours containing answer in Mosher case is at hand. If I failed to answer your former letter, I must ask your pardon. The neglect was unintentional. I referred the inquiry as to the status of the case at that time to Mr. Michael O'Brien, of Alpena, who purchased the Mitchell end of the Mosher contract in May or June last. His expectation was to file a bill of revivor or take other steps to install him in Mr. Mitchell's place in the pending suit, and I had supposed he had long ago done so. I today forward to him your copy of answer of Old Second National Bank, and suggest you write him for information regarding the case.
                "Yours, etc.,
                    "E. E. HASKINS."

Upon receiving this letter, the complainants went to Alpena, and had an interview with the defendants, and offered to pay the amount due on the contract, principal and interest, and any amount they had in taxes, and on February 1, 1897, the offer was renewed by letter. It was as follows:

" Assuming that you have the Mitchell title to the land, I contend that as to that land, between myself on the one part, representing the Old Second National Bank of Bay City, and the Alpena County Savings Bank, holding the Mitchell title, the legal relation is that of mortgagor and mortgagee. And that there may be no misunderstanding between us, I hereby offer to pay up in cash and in full the principal, interest, and costs past due and unpaid on the land contract dated December 8, 1891, between Austin W. Mitchell on the one part and A. Mosher & Son on the other part, for the sale of the land in question, including all amounts that you have paid as taxes on the land. I understand you to have declined such an offer from me verbally, but I make this offer in writing, so that, in a friendly, but plain, way, you may understand my position."

This being refused, this suit was commenced on February 10th.

Counsel for the defendant sums up his reasons why complainants should not be granted relief, as follows:

"1. They refused to perform contract.

"2. They neglected to give notice within a reasonable time of their readiness and willingness to perform.

"3. Their rights in contract were duly forfeited by notice.

"4. They are prohibited by contract from maintaining suit.

"5. They denied liability under contract.

"6. They refused to accept proper deed when tendered.

"7. They have adequate remedy at law, and under special facts of this case is the only proper remedy.

"8. They have trifled with this contract.

"9. They have not been 'ready, desirous, prompt, and eager' to perform on their part.

"10. They have no equities."

In relation to these, we may say that the evidence con-

vinces us that the complainants did refuse to perform the contract according to its strict letter, and defaulted in payment when they declined to pay the amount due at the time the deed was tendered. Thereupon Mitchell served notice with a view to terminating the contract. Whether, under the terms of the contract, this notice was a sufficient one to support proceedings at law to enforce a forfeiture, we need not inquire, as no such proceedings were taken by Mitchell. On the contrary, he chose to treat the contract as continuing, and began proceedings with a view to enforcing its provisions, by collecting the contract price, through foreclosure of the vendor's lien. We must therefore conclude that any meditated forfeiture was waived, the effect of the notice was nullified, and the *status* of complainants thenceforth was that of vendees in default. That this was an intentional waiver is more plainly indicated by the deed to O'Brien, in which the existence of the complainants' contract rights was recognized, and subject to which Mitchell's interest was conveyed. No other steps have been taken to forfeit this contract, and, within a few days after receiving authentic information of the conveyance from Mitchell to the Alpena Savings Bank, the complainants made an offer of performance, which the defendant bank refused to accept. A court of law would hardly adjudge the contract forfeited under these circumstances, and we discover no inequity in granting relief to the complainants. The defendant bank has no greater rights than Mitchell, and suffers no injustice when it receives full payment. Our understanding is that the controversy is between the complainants and the Alpena Savings Bank, defendant Millen having disclaimed, and Mitchell having no interest in the matter. No decree is asked against him, and we do not discover that he has appeared in this court.

As against the Alpena Savings Bank the decree will be reversed, and one entered in this court in favor of the complainants, in accordance with the prayer of their bill, with costs of both courts. The amount due upon the con-

tract when this suit was commenced is adjudged to be as admitted upon the hearing by counsel for the respective parties, and will be definitely fixed by the decree. From that sum will be deducted the costs of both courts, which complainants will recover. As to the other defendants, neither party will recover costs.

The other Justices concurred.