Argued September 10; modified October 24; rehearing denied
December 16, 1941

EDWARDS *v.* WIRTZ ET UX.

(118 P. (2d) 114)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*W. W. Balderree,* of Grants Pass, for appellant.
*James T. Chinnock,* of Grants Pass, for respondents.

KELLY, C. J.  On March 12, 1937, defendants-respondents, Frank H. Wirtz and Metta E. Wirtz,

entered into a contract with Edward Sidney Gould for the sale and purchase of the property in suit known as the Wildwood Auto Camp, and the personal property in use there. The purchase price was $4,200, of which $800 was paid upon the execution of the contract. The contract provided for the payment of the balance of the purchase price and interest thereon at the rate of six per cent per annum in monthly installments of $25 each. On or about January 13, 1939, Edward Sidney Gould assigned and transferred said contract and his interest thereunder to Della Alitha Lindeman and E. J. Lindeman; that on or about April 5, 1939, Della Alitha Lindeman assigned and transferred said contract to Ernest Wilkerson and Florence Ruth Wilkerson, his wife; and on or about July 22, 1939, for valuable consideration Ernest Wilkerson and Florence Ruth Wilkerson assigned and transferred to the plaintiff all their right and interest in and to said contract and defendants accepted and acknowledged plaintiff as the new vendee under the terms of said contract and accepted payments thereunder from the plaintiff.

Monthly payments of $25 each were made to and received by defendants upon said contract, beginning on April 15, 1937, and continuing to and including February 19, 1940. These payments were made at the bank where the papers were in escrow. Of these payments, the bank credited the aggregate sum of $571.84 as interest and the balance of $303.16 as principal.

The plaintiff took possession during the latter part of July, 1939, and on the 19th of November, 1939, left Mr. and Mrs. Richard O. Brown in possession thereof as her representatives. Mrs. Brown is a daughter of plaintiff.

On January 15, 1940, through a Mr. Thomas, the plaintiff entered into a contract of purchase and sale of the property to Jack Lewis and Betty Lewis, husband and wife. This contract was executed by plaintiff through her attorney in fact, Lottie [Mrs. Richard O.] Brown, as party of the first part and Jack Lewis and Betty Lewis in person, as parties of the second part, and fixed the consideration therefor at the sum of $5,115.73, to be paid as follows: $25 on the 15th day of February, 1940; $25 monthly thereafter on the 15th day of March and April, 1940; $45 on the 15th day of May, 1940; and $45 on the 15th day of each and every month thereafter until the full sum of the purchase price shall be paid.

This Edwards-Lewis contract also provided that no interest should be paid on $2,000; but the balance of the purchase price, $3,115.73, should bear interest at the rate of six per cent per annum, to be deducted from the monthly installments as the same were paid.

In the latter part of January, 1940, Mr. and Mrs. Brown delivered possession of the property to Mr. and Mrs. Lewis. Some time during the latter part of January, 1940, Mrs. Edwards, the plaintiff, and her daughter Mrs. Richard O. Brown, left the property giving Mr. and Mrs. Lewis exclusive possession thereof. Mr. Brown had gone to Los Angeles a short time before.

The payment of February 19, 1940, credited upon the contract held by plaintiff originally executed by Edward Sidney Gould and defendants, was made by Mr. and Mrs. Lewis.

On March 15, 1940, Mr. Wirtz purchased from Mr. and Mrs. Lewis some of the stock of provisions and other merchandise on the premises, and took possession of the property in suit.

On the 18th day of March, 1940, Mr. Wirtz mailed the following letter to Mr. Brown:

> "Grants Pass, Ore
> March 18th 40.
>
> Mr. R. O. Brown
> 109 - East 88th Place
> Los Angeles, Calif.
>
> Dear Sir: - Just want to notify you that Mr. & Mrs. Jack Lewis, just up and left the camp, and the contract has been broken, and we have taken possession of the place. The payment was not paid, and the insurance isnt paid, or the taxes, so we had to pay them, and Montgomery Ward is figuring on putting a lean on the place for the mattress and fibre board, for which you told us they were paid, and the Electric Co is figuring on taking the elect rang & hot water heater also the electric hot plates, and you told us they were paid for also. You sure left this place in an awful shape.
>
> F. H. Wirtz."

Mr. Brown received the foregoing letter on the 19th day of March, 1940; and with his wife, left that evening at about six or six thirty in an automobile arriving at the property in suit on March 20, 1940.

We quote from Mr. Brown's testimony:

"Q. What did Mr. Wirtz say to you when you arrived?

A. We drove in the back and Mr. Wirtz was out in the center and he came over to the car and when I got out of the car and he recognized me and the first thing he said: 'Well you have broken your contract, we have got possession of the place and will have nothing more to do with us, you haven't any right out there.

Q. And then what did you do after he made that statement?

A. Well I told him to wait, that I was awful sorry it happened, and asked why he didn't notify us. He told us he didn't know where we was at.

I told him we had the money to pay the amount of the taxes and any expense and we will pay a reasonable amount for his trouble, and Mr. Wirtz said we had broken the contract and he had possession of the place and didn't want anything more to do with us. I suggested we would rent a cabin and stay all night and go down to a lawyer and talk it over and try to reason it out and see who was right and who was wrong and see if we couldn't make a settlement. Mrs. Wirtz told us that the place wasn't big enough for both of us and they were there and to come back to town and talk to the lawyer.''

We quote from the testimony on direct examination of defendant Frank H. Wirtz:

"Q. * * * Where do you reside?
A. About nine miles north of Grants Pass.
Q. On what is known as the—what do you call your camp?
A. Wildwood Auto Camp.
Q. And that is the camp in question. How long have you been residing on the premises there?
A. About three months.
Q. You took possession what date?
A. March—night of March 15th.
Q. Who was in possession prior to that time.
A. Jack and Betty Lewis.
Q. They were holding the property under contract were they?
A. Yes.
Q. From whom?
A. From Mrs. Belle Edwards.
Q. Belle Edwards, the plaintiff?
A. Yes.''

We also quote from Mr. Wirtz's testimony on cross-examination:

"Q. And, as I understand it, you spent the night of March 15th, 1940, at the camp and took possession then?

A. Mrs. Lewis was still there the night of the 15th.

Q. This taking over of the camp by you, Mr. Wirtz, was more or less a friendly arrangement or agreement between you and the Lewises?

A. Mr. Lewis said he couldn't make the payment and then we took the property. * * *

Q. * * * You bought Lewis' stock of groceries and so on out there?

A. I bought gas and oil and he had a few groceries; he took lots of groceries with him.

Q. You took possession on the 16th, then you say and it was on the 18th, according to this letter, that—when I say 'this letter', I am referring to plaintiff's exhibit 'C'—you wrote this letter to Mr. Brown and told him 'that Mr. and Mrs. Lewis just up and left the camp and the contract has been broken', and that you had taken possession. Apparently from the writing of this letter you had Mr. Brown's address so you knew where you could get in touch with him.

A. We got a letter from Mr. Brown on the 18th, on the day after we went in there—on the 16th we had a letter from Mr. Brown.

Q. You have that letter with you?

A. No, we haven't got that letter.''

■ It is apparent that defendants ousted plaintiff of possession of the premises in suit, which is an act evincing an unmistakable intent to declare a forfeiture and for that reason amounted to an election to terminate the contract.

One of the major questions, therefore, in this case is whether such election to rescind was justified.

■ In the absence of such conditions as a court of equity may deem good ground to afford relief against a default in punctual payment, no such relief is available to plaintiff. The law affords no such relief. The distinction between the case at bar and the case of

*Grider v. Turnbow*, 162 Or. 622, 94 P. 2d 285, and the cases there cited is that in these cases the forfeiture clause was not self-executing, while in the instant case the contract of purchase and sale contained self-executing provisions for the forfeiture of payments, one of which provisions is as follows:

"Provided, however, that if default be made in the payment of any instalment or instalments when the same becomes due, time being in all things of the essence, all previous instalments theretofore paid, either of principal or interest, shall be and remain the property of the vendors, the said Warranty Deed and Bill of Sale so deposited in escrow, shall be returned to the vendors herein for cancelation, *without notice to the vendee* and the property shall thereupon remain the property of the vendors, unaffected and unencumbered by this agreement, without any right of the vendee or reclamation or compensation for money paid or improvements made, vendors being entitled to retain the same as compensation for loss of rental and waste during the time vendee has remained in possession." [Italics supplied.]

The payments upon the contract in suit which were made later than upon the 15th day of the month were made upon August 16, 1937, May 16, 1938, July 16, 1938, August 18, 1938, October 17, 1938, and the payment made by Mr. and Mrs. Lewis on February 19, 1940.

■ It is evident from the fact that plaintiff did not become the assignee of the contract in suit until July, 1939, and that she gave possession to Mr. and Mrs. Lewis on January 15, 1940, that none of the deferred payments was made by plaintiff, and there is nothing to indicate that prior to March 15, 1940, plaintiff was aware that Mr. and Mrs. Lewis had not made the February, 1940, payment promptly, but had deferred making it until the 19th of that month. We are unable

to concur in plaintiff's claim that she was lulled into a sense of false security and a belief that she might make payments at times and dates other than the due date thereof and perform the other terms and conditions of said contract at other times than those provided in said contract.

While the language of plaintiff's complaint indicates that she sought the jurisdiction of equity, in fact, her claim, as stated in her complaint, is one of legal cognizance.

In brief, she claims a rescission of the contract in suit, because of an allegedly wrongful declaration of forfeiture by defendants and asserts a demand for the amount paid by her upon the contract and the value of permanent improvements alleged to have been made upon the premises less a reasonable rental value during occupancy of said premises by plaintiff and her assignors, coupled with a claim and delivery count for personal property alleged to be wrongfully withheld by defendants. If her cause thus pleaded were supported by the testimony, she would have a complete remedy at law.

Plaintiff urges that acceptance by defendants from Mr. and Mrs. Lewis on February 19, 1940, of the payment due on February 15, 1940, constituted a waiver of the provision in the contract in suit requiring payments to be made promptly upon the 15th of each month.

When this payment of February 19, 1940, was received, defendants notified Mr. and Mrs. Lewis that future payments must be made promptly in accordance with the terms of the contract.

It is urged, first, that plaintiff was entitled to notice that deferred payments would not thereafter be accepted, but prompt payment would be required; and second, that without such notice plaintiff was lulled

into a sense of security against any claim that she would be in default by failing to observe such promptitude.

As heretofore stated, the record fails to disclose that plaintiff was aware that such deferred payment had been accepted from Mr. and Mrs. Lewis; and, hence, plaintiff could not have been affected by it.

■ When it is remembered that plaintiff placed Mr. and Mrs. Lewis in possession of the premises, and left the state of Oregon, it would seem that notice to them would be notice to plaintiff of defendants' insistence that future installments should be promptly made.

The case of *Bishop v. Barndt*, 43 Cal. App. 149, 184 P. 901, is cited to the point that notice to Mr. and Mrs. Lewis would not suffice as a notice to plaintiff.

There, notice to the real party in interest, Mr. Moon, was deemed notice to the original vendee, Elizabeth J. Barndt, and to that vendee's assignee, defendant Stick. Miss Coward, who was the holder of an independent contract of purchase, executed by defendant Stick, was held not entitled to notice to perform because of lack of privity with plaintiff, plaintiff being the original vendor.

The Bishop-Barndt case tends to support the principle that Mr. and Mrs. Lewis, as representatives of plaintiff, would be deemed to be notice to plaintiff. While they were not in contractual privity with defendants, they were in privity of contract with plaintiff.

The provision of the contract, upon a clause of which plaintiff bases her claim that the same is not self-executing, is as follows:

"Vendee hereby promises, covenants and agrees that he will make the payments as above specified and

punctually at the times provided herein and will well and truly perform all the covenants and agreements required by this contract, to be performed by him; provided, however, that in the event the vendee shall fail to make the payment as aforesaid, either principal or interest or either of them, punctually and upon the strict terms and at the times above specified or fail to keep any of the other conditions of this agreement, time of payment and strict performance hereby being declared to be of the essence, then vendors shall have the right to declare this agreement null and void and in such case all the right and interest hereby created or then existing in favor of the vendee derived under this agreement shall utterly cease and determine and the premises aforesaid shall revert and revest in the vendors *without any declaration or notice of forfeiture* or act of re-entry or without any other act by the vendors to be performed and without any right of the vendee of reclamation or compensation for money paid or for improvements made, as absolutely, fully and perfectly as if this agreement had never been made, and in the event it becomes necessary for the vendors to bring an action at law or suit in equity to enforce any of their rights hereunder, then in such event vendee herein promises and agrees to pay, in addition to costs and disbursements, whatever reasonable attorneys fees vendors have incurred in said suit or action.'' [Italics supplied.]

The clause to which plaintiff refers in the foregoing provision and upon which she bases the claim that the forfeiture clause is not self-executing is, ''then vendors shall have the right to declare this agreement null and void'' etc. It is argued that this implies an option on vendors' part and requires a reasonable notice of vendors' intention to exercise such option before any forfeiture could become effective.

■ As we construe the foregoing provisions of the contract, notice of forfeiture is expressly waived and

the event which brings about the right of reentry and a termination of the contract is the failure of the vendee to make payment or payments punctually and upon the strict terms specified in the contract.

■ Taking this view, the result is that plaintiff has not proven a wrongful or unjustified rescission by defendants and therefore plaintiff is not entitled to the relief demanded in her complaint.

■ Defendants waived the right to rescind the contract in suit by interposing an answer praying for strict foreclosure.

■ As stated by the supreme court of Michigan:

"The rule has often been applied that any attempted forfeiture or rescission by notice may be waived and is waived by subsequent acts clearly inconsistent with an intent to exercise the right." *Krell, et al. v. Cohen, et al.* 214 Mich. 590, 593, 183 N. W. 53, citing *Old Second Nat. Bank v. Alpena County Sav. Bank,* 115 Mich. 548, 553, 73 N. W. 809; *Maday v. Roth,* 160 Mich. 291, 125 N. W. 13, 136 Am. St. Rep. 441; *Barber v. Stone,* 104 Mich. 90, 62 N. W. 139; *Patterson v. Carrel,* 171 Mich. 296, 137 N. W. 158.

"Waiver may be express or implied. There is an express waiver of the right to declare forfeiture for past defaults where there is an actual agreement to keep the contract in force. Waiver may be implied from the acts and conduct of the party entitled to forfeiture. A waiver may be implied from the fact that both parties treat the contract as existing after a breach thereof. Thus, accepting interest after law date operates to recognize the purchaser's right as still subsisting. So, where the vendor tenders a deed. Such recognition constitutes a waiver of the right to declare forfeiture for a past breach of the contract.

There is an implied waiver where: vendor   *   *   * sues to foreclose a vendor's lien." Vol. 1, Jones Cyclopedia on Real Property Law, p. 464, et seq., section 327, citing in footnote 79, *Mo. Pac. R. Co. v. Frost,* 146 Ark. 472, 225 S. W. 645; *Old Second Nat'l Bank*

*v. Alpena County Sav. Bank,* supra; *Chicago Blvd. Land Co. v. Apartment Garages,* 245 Mich. 448, 222 N. W. 697.

■ The relief sought by defendants' answer is not cancellation or rescission of the contract which would have the effect of terminating it; but by their answer thus interposed defendants seek the enforcement of a contract right which can only exist if the contract is still in force.

As stated by Mr. Justice BAILEY:

"There is this apparent distinction between the effect of the vendor's declaring a forfeiture and his institution of a suit for strict foreclosure: In the former instance he treats the contract as at an end and the vendee as no longer having any interest in the property. While by availing himself of the latter remedy he recognizes the vendee's interest as continuing until foreclosed by the decree in his suit." *Grider v. Turnbow,* supra.

The relief sought by defendants' answer is not cancellation or rescission of the contract, but defendants thereby recognize that plaintiff has an equity in the property in suit and seek to have it foreclosed and determined.

■ As stated by Mr. Justice RAND:

"It is well settled in this state that a vendor is entitled to the relief of strict foreclosure where the vendee fails to comply with the terms of his contract in the payment of the purchase price." Atkochunas v. Gustafson, 156 Or. 126, 66 P. 2d 1192, citing authorities.

■ The decree of the circuit court granting plaintiff four months from the rendition of the decree in which to pay the amounts found by that court to be owing from plaintiff to defendants. We think that this appeal has been prosecuted in good faith; and, hence, we hold

that the decree of the trial court should be amended to the effect that plaintiff shall be given four months from the date of the entry of the mandate in the journal of the circuit court within which to pay the amounts so decreed to be owing by her to defendants, and in default of such payment that thereupon plaintiff's right and interest in and to said property shall be entirely determined, foreclosed and terminated.

With this supplementary modification, the decree of the circuit court is affirmed.

---

Petition for rehearing denied December 16, 1941

ON PETITION FOR REHEARING

KELLY, C. J.

■ Upon consideration of appellant's petition for rehearing, we find no support in the testimony for respondents' allegation that $300 is a reasonable attorney's fee to be allowed herein. This allegation is denied in appellant's reply. "Upon this issue no evidence was offered by either party, and this being so, the statutory fee only will be allowed." *Lassas v. McCarty,* 47 Or. 474, 484, 84 P. 76. See cases there cited. Also *Columbia River Door Co. v. Todd,* [on petition for rehearing], 90 Or. 147, 154, 175 P. 443, 860, and cases there cited.

In the case at bar, we find no stipulation authorizing the trial court to fix the fee; and, hence, such cases as *Olson v. Boling,* 120 Or. 554, 252 P. 961, and *Randolph v. Christensen et al.,* 124 Or. 661, 671, 672, 265 P. 797, are not in point.

The former opinion is therefore modified to the effect that the allowance of $200 as a reasonable attorney's fee in favor of defendants should be and is deleted from the final decree herein.

The petition of appellant for a rehearing is denied.