Argued October 3, 1957, affirmed April 30, petition for
rehearing denied May 28, 1958

## HOWARD *v.* JACKSON
324 P. 2d 757

*John H. Horn,* Roseburg, argued the cause for appellant. With him on the brief was Randolph Slocum, Roseburg.

*Dudley C. Walton,* Roseburg, argued the cause for respondent. On the brief were R. L. Whipple and Geddes, Felker, Walton & Richmond, Roseburg.

Before PERRY, Chief Justice, and ROSSMAN, BRAND and McALLISTER, Justices.

McALLISTER, J.

This suit was commenced by the plaintiff, Margaret Howard, as administratrix of the estate of Garrett H. Griggs, deceased, against the defendants, O. A. and

Virgie Mae Jackson, husband and wife, as a suit to quiet title to a parcel of real property in Riddle.

The defendant Virgie Mae Jackson, by her amended answer, alleged that she and her husband, O. A. Jackson, had entered into a contract to purchase the real property from the decedent, Garrett H. Griggs, and that by a decree of divorce she had acquired her former husband's interest in said property. O. A. Jackson did not appear and an order of default was entered against him. Virgie Mae Jackson, who will hereinafter be referred to as the "defendant," asked the court to determine the balance due on the contract and to require plaintiff to convey the property to her upon the payment of such balance.

The plaintiff filed a reply in which she admitted that the contract had been entered into by the decedent Griggs but alleged that defendant had defaulted in the performance of said contract and asked the court for "foreclosure of said contract" and a reasonable attorney's fee. Since the case turns on the plaintiff's election of a remedy, this reply will receive further consideration later in this opinion.

The court entered a decree requiring the defendant to pay into court the balance due on the contract in the sum of $460.42, together with interest, costs and attorney's fees of $200. The decree required the plaintiff, after said sums had been deposited into court, to convey the property to defendant and provided that if the plaintiff failed to do so the decree should stand in lieu of the conveyance. From this decree plaintiff appeals.

The circumstances which gave rise to this controversy will be briefly summarized. In August, 1950, Garrett H. Griggs was about 84 years of age, almost completely bedridden by illness and in need of con-

stant care. He owned a parcel of land in Riddle consisting of about four lots and a dwelling house thereon in which he made his home.

The defendant first met Griggs several months prior to August, 1950 when she went to Riddle to visit her nephew and his wife who were then living with Griggs and caring for him. The contract, dated August 23, 1950, provided for the sale by Griggs of his home to the Jacksons for a purchase price of $1,855, of which $100 was paid down and the balance was to be paid in monthly installments of $50. In addition to the payment of the purchase price, the contract required the Jacksons to furnish Griggs with board and lodging and $20 per month in cash during his lifetime.[1] There is very little evidence concerning the circumstances under which this contract was entered into. No evidence was offered to prove the reasonable market value of the property. Mr. Griggs' capacity to enter into the contract is not challenged in this proceeding.

The defendant took care of Griggs until about October 15, 1950 when he was taken to a sanitarium in or near Roseburg. Griggs remained in the sanitarium until about February 16, 1951, when he was brought to the home of his foster daughter, Margaret Howard, the plaintiff in this proceeding. Griggs was cared for in the Howard home in Riddle until he was moved to a hospital in Roseburg a few days before his death on December 6, 1951.

The evidence is far from conclusive as to why

[1] "Not less than $50.00 on or before September 25th, 1950 and not less than $50.00 on or before the 25th day of each and every month thereafter until the full purchase price, together with accrued interest has been paid in full, and in addition to the above mentioned payments, the said second parties [O. A. Jackson and Virgie M. Jackson] hereby agree to provide board and lodging and $20 in cash each month to said first party [G. H. Griggs] during his lifetime, provided the title to said premises is in order."

Griggs was taken to the sanitarium in October, 1950 and there is no evidence as to who, if anyone, paid the sanitarium for his care. It is also not clear why on February 16, 1951 Griggs was brought to the home of his foster daughter instead of to his own former home for further care by the defendant. It is clear that after October 15, 1950, the defendant did not furnish board and lodging for Mr. Griggs but the evidence is conflicting as to the reason. Defendant claims that she was ready and willing to comply with her obligation to care for Griggs but that plaintiff prevented her from doing so. Plaintiff testified that defendant insisted that her health would not permit her to take Griggs back into his former home and care for him there. Other witnesses testified that defendant had directly refused to care for Griggs any longer. The defendant did continue to pay Griggs $20 per month to and including September, 1951.

On about February 23, 1951, a few days after Griggs returned to Riddle from the sanitarium, an escrow was created with the Myrtle Creek Branch of the United States National Bank of Portland. A copy of the contract dated August 23, 1950, together with a warranty deed executed by Griggs in favor of the Jacksons, was deposited with said bank as the escrow agent of the parties. There was also delivered to the bank a letter dated February 23, 1951, signed by Mr. Griggs and the Jacksons stating that the balance due on the contract as of that date was $1,523.25, and directing the bank to remit the monthly installments to J. L. Aikins of Riddle, who held two mortgages on the property on which there was then a total balance due of $1,195. The letter also contained the following paragraphs:

"It is our desire that you receive payments on

the contract in the amount of not less than $50 per month until the said unpaid balance is paid in full. In addition to said sum of $50 per month, the purchasers are obligated to pay the sum of $20 in cash each month during the lifetime of G. H. Griggs. You need not concern yourselves with the obligation of the purchasers to provide board and lodging to said G. H. Griggs, or with their obligation to pay said sum of $20 to Mr. Griggs.

"Upon full performance of said contract, without regard, however, to said room and board, you are authorized to deliver the deed attached to said purchasers and Grantees."

There is no evidence as to why the above paragraphs were included in the letter of instructions to the escrow agent although it might be inferred that they were placed therein because the bank did not want to be involved with the agreement for support.

The defendant and her husband were divorced by a decree entered in the circuit court for Douglas county on May 25, 1951 and Jackson apparently moved to California at about that time and has had no further interest in this controversy.

During the summer of 1951 defendant rented the Griggs property for a month and was away from Riddle about six weeks. In September, 1951 defendant agreed to sell the property for $2,800 to one Grant Weathers who went into possession. The money necessary to pay the balance of the purchase price due Griggs was apparently advanced by Weathers and deposited with the escrow agent. Because of some defect in Griggs' title to the property, the sale to Weathers was never consummated and the money advanced by him was eventually withdrawn from the bank. Litigation ensued between defendant and Weathers concerning his occupation of the property

while the proposed sale was pending, but the exact nature and result of this litigation is not disclosed by the record. After Weathers vacated the property defendant returned and lived there for about a year. She then rented the property to a couple named Anglin and moved to California. The Anglins were still in possession when this suit was instituted.

On December 29, 1952, plaintiff was appointed administratrix of the estate of the decedent Garrett H. Griggs and letters of administration were issued to her by the county court for Douglas county.

On or about April 23, 1953, the plaintiff withdrew from the bank the copy of the contract of sale dated August 23, 1950 and the deed executed by Griggs on February 23, 1951 which had been deposited with the bank for delivery to the purchasers when the purchase price was fully paid.

On or about April 24, 1953, an attempt was made by the plaintiff, as administratrix, to give notice in writing to the Jacksons that she considered the contract of August 23, 1950 "null and void" because of the default of the purchasers in failing to (1) provide board and lodging for Griggs; (2) to pay the taxes on the real property; and (3) to pay numerous installments of the purchase price. The reply alleges that this notice was mailed to the Anglins as tenants of defendant and that defendant knew of said notice shortly after it was received by said tenants.

On or about April 30, 1953, the plaintiff, as administratrix, filed an ejection action in the circuit court for Douglas county against the Anglins and the Jacksons. The Anglins were served with summons and in May 1953 agreed with plaintiff to allow a judgment for possession to be entered against them and further agreed to remain in possession of the property

as tenants of plaintiff. No service of the summons was made on either of the Jacksons and the record does not disclose whether a judgment of any kind was ever entered in the ejectment action.

On June 16, 1953, the plaintiff's attorneys wrote to the escrow agent and instructed it to accept the monthly payments of $50 being paid by the Anglins to the administratrix as rental of the Griggs property and to credit said monthly payments to the account of J. L. Aikens until his mortgage was paid in full. The Anglins made regular monthly payments of $50 to the escrow agent pursuant to this arrangement.

With the controversy in this posture, the complaint in this case was filed on September 21, 1953. The complaint was in the abbreviated form usual in a suit to quiet title with the usual prayer for relief.

As stated above, the defendant, Virgie Mae Jackson, filed an amended answer alleging the execution of the contract of sale by Griggs on August 23, 1950, a copy of which was attached to the answer. The defendant asked the court to determine the balance due on the contract and to require plaintiff to convey the property to her upon her payment of such balance into court.

Plaintiff in her reply abandoned the theory of her complaint and alleged affirmatively the execution of the contract by Griggs and the breach of the contract by defendant in failing to perform the agreement to furnish board and lodging; in failing to pay the $20 per month to Griggs; in divorcing her husband and in moving from the premises, which plaintiff claims made it impossible for defendant to perform the contract; in failing to pay the taxes and in failing to pay the purchase price. The reply further alleged the mailing of the notice to the Anglins declaring the contract

null and void, the filing of the ejectment action and the making of the agreement with the Anglins to remain on the property and to pay rent as tenants of plaintiff. After alleging all of the foregoing, the reply concluded with the following paragraph and prayer:

"That said contract provided, in part, that in case suit or action is instituted to foreclose the said contract, the defendants O. A. Jackson and Virgie Mae Jackson agree to pay such sum as the Court may adjudge reasonable as attorney's fees to be allowed plaintiff in said suit or action; that defendant Virgie Mae Jackson's Answer setting up the alleged rights of O. A. Jackson and Virgie Mae Jackson under said contract, necessitates plaintiff's request herein for foreclosure of said contract; and that a reasonable attorney's fee to be allowed plaintiff herein is the sum of Six Hundred and no/100 ($600.00) Dollars.

"WHEREFORE, Plaintiff prays for a Decree of this court declaring the forfeiture of said contract, and awarding plaintiff judgment against the defendant, Virgie Mae Jackson, for the sum of Six Hundred and no/100 ($600.00) Dollars, as and for attorney's fees, and allowing plaintiff the relief prayed for in plaintiff's complaint."

■ Plaintiff's reply, although not a model pleading, must be construed as alleging a cause of suit for strict foreclosure of the contract. The last paragraph of the reply states unequivocally that the setting up by the defendant of her rights under the contract "necessitates plaintiff's request herein for foreclosure of said contract." The reply also demands that defendant pay a reasonable attorney's fee in compliance with a provision of the contract requiring the purchaser to pay such a fee "in case suit or action is instituted to foreclose the contract." See *Grider v. Turnbow*, 162 Or 622, 94 P2d 285 and *Zumstein v. Stockton et ux.*, 199

Or 633, 264 P2d 455, where complaints containing allegations generally similar, although differing in detail, were held to state a cause of suit for strict foreclosure.

■ This case was tried in the court below on the theory that the reply sought a decree of strict foreclosure. Shortly after the trial commenced there was considerable colloquy between court and counsel concerning the nature of the relief demanded by each party and the proper order of proof in view of the way in which the issues had been joined. The discussion concluded with everyone in apparent agreement that the plaintiff was seeking a foreclosure of the contract.[2] No motion to amend her pleadings was made by plaintiff at any stage of the proceedings. Since neither party has objected to the manner in which the issues were joined, there is no reason to consider that question in this opinion.

■ Since we must construe plaintiff's reply as a demand for strict foreclosure of the contract, it follows that the plaintiff was given the exact relief demanded by her. It is conceded that the balance due on the contract as stated in the decree is correct if defendant is given credit for all rentals paid by the Anglins to the escrow agent. Under the circumstances it is clear that defendant is entitled to all of the sums paid on the contract by her tenants. The law is well settled that by bringing a suit for strict foreclosure, the vendor admits that the purchaser is entitled to retain

---

[2] "Mr. Walton * * * I think that we are down to the position where this is, in essence, a suit for foreclosure of a contract and a counterclaim for suit for specific performance or a suit for specific performance and a counterclaim for foreclosure.

"COURT: I think that is true. That being true, I would have thought the defendants should have proceeded. Since you have started this way, complete your whole case, both in your original complaint and in your affirmative reply.

"MR. HORN: Yes, Your Honor."

possession until barred finally by the decree of the court. It is also settled that the vendor is not entitled to the rents and profits of the premises while the purchaser was lawfully in possession thereof under her contract. See *Grider v. Turnbow,* supra, and *City of Reedsport v. Hubbard,* 202 Or 370, 274 P2d 248. Any agreement which the Anglins may have made to "attorn" to plaintiff was not binding on the defendant and could not affect her rights in this proceeding. Defendant was not served in the ejectment action and the judgment, if any was entered, was not against her.

Notwithstanding the allegations in her reply and the theory on which the case was tried in the court below, the plaintiff now insists that the contract should be both rescinded and forfeited. We will briefly point out why neither of these remedies, both inconsistent with the remedy of strict foreclosure, is available to plaintiff.

Plaintiff cites the well established rule that if the grantee of real property, conveyed to him in consideration of his promise to support the grantor, refuses or substantially fails to perform his agreement, equity has both the jurisdiction and the duty to set aside such conveyance. See *Thomas v. Thomas,* 24 Or 251, 33 P 565; *Ames v. Moore,* 54 Or 275, 101 P 769; and *Houston v. Greiner,* 73 Or 304, 144 P 133.

■ A major portion of plaintiff's brief is devoted to the argument that this rule should be applied here. The simple answer is that plaintiff has neither alleged nor attempted to allege a cause of suit for rescission of the contract based on the refusal of defendant to perform her contract to support Griggs. If such a cause of suit had been seasonably alleged and proved, a court of equity might have granted the relief suggested for the first time by plaintiff in her brief

on appeal. Whether the court would have been prevented from granting that relief by a failure to act promptly, the acceptance and retention of payments after Griggs' death and the attempt to declare a forfeiture need not be considered here. It is also unnecessary to consider what effect, if any, the letter to the escrow agent, dated February 23, 1951, had on the obligation of the defendant to provide board and lodging to Griggs.

 Rescission and strict foreclosure are inconsistent remedies. Rescission seeks to cancel and annul the contract from the beginning and restore the parties to status quo. *Miles v. Hemenway,* 59 Or 318, 111 P 696, 117 P 273; *Mascall v. Erikson,* 131 Or 509, 382 P 2; *Atkochunas v. Gustafson,* 156 Or 126, 66 P2d 1192; *Share v. Williams et ux.,* 204 Or 664, 277 P2d 775, 285 P2d 523; and 3 Black, Rescission and Cancellation 1482, § 616. Foreclosure recognizes that the contract is presently in effect and seeks to enforce it. It is an affirmance of the contract. See *Flanagan v. Great Cent. Land Co.,* 45 Or 335, 77 P 485; *McCracken v. Walnut Park Garage, Inc.,* 156 Or 697, 68 P2d 123; *Grider v. Turnbow,* supra; *Nielsen v. Baldridge,* 173 Or 555, 146 P2d 754; and *Zumstein v. Stockton et ux.,* supra. Having elected the remedy of foreclosure, the plaintiff is not entitled now to claim relief available only under the inconsistent remedy of rescission.

 Plaintiff in the prayer of her reply also asks the court to declare a forfeiture of the contract and to quiet her title as prayed for in her complaint. If we construed plaintiff's reply as now suggested, the relief demanded would have to be denied for several reasons. The principal reason is that equity "will never interpose to declare a forfeiture, that being a matter, if insisted upon, entirely for the law side of the court."

*Flanagan v. Great Cent. Land Co.,* supra. From the Zumstein case, supra, we quote:

"* * * The aid of equity is not required in order to effect a forfeiture and will not be given for that purpose. * * * The option to declare a forfeiture gives to the vendor rights strictly legal in nature. It may be accomplished after reasonable notice by lawfully taking possession of the property or by bringing an action in ejectment."

See also *State v. 1920 Studebaker Touring Car et al.,* 120 Or 254, 251 P 701. In 2 Pom Eq Juris (5th ed) 317, § 460, referring to the doctrine that equity will not declare a forfeiture, it is said that "There are, in fact, no exceptions to this doctrine; those which appear to be exceptions are not so in reality."

Another reason is that although under proper circumstances equity will recognize that a forfeiture at law has been previously accomplished, there is no evidence that such a forfeiture has been effected in this case. The contract of sale merely gave the vendor the option to declare a forfeiture and was not self-executing. *Epplett Empire Inv. Co., Inc.,* 99 Or 533, 194 P 461. A forfeiture does not result automatically upon the occurrence of a default under a contract of sale which gives the vendor an option to declare a forfeiture or to exercise alternative rights. *Zumstein v. Stockton et ux.,* supra. The right to declare a forfeiture under such a contract may be exercised only when (1) the vendor first gives notice for a reasonable period of time, and (2) the purchaser fails to pay during the time fixed by such notice. A notice declaring that a forfeiture is then effected rather than stating that a forfeiture will be effected in the future unless payment is made within a prescribed time is a breach of the implied stipulation to give reasonable notice and

does not effect a forfeiture. *Epplett Empire Inv. Co., Inc.,* supra.

A further reason is that a forfeiture whether occurring automatically or declared in compliance with the contract is waived when the vendor seeks strict foreclosure. *Grider v. Turnbow,* supra, and *Zumstein v. Stockton et ux.,* supra.

The decree is affirmed.

Neither party shall recover costs in this court.