Argued December 6, 1978; reargued February 6,
reversed June 26, petition for rehearing denied July 24, 1979

ELSASSER, *Appellant,*

*v.*

WILCOX et ux, *Respondents.*

(No. A 7701-00402, SC 25572)

596 P2d 974

Harry R. Kraus, Portland, argued and reargued the cause and filed a brief for appellant.

Marshall C. Cheney, Portland, argued and reargued the cause for respondents. With him on the brief was Donald O. Costello, Portland.

HOWELL, J.

Denecke, C.J., specially concurring opinion.

Linde, J., specially concurring opinion.

Holman, J., dissenting opinion.

**HOWELL, J.**

Plaintiff filed a declaratory judgment proceeding to determine the rights of the parties under a contract for the sale of real property between plaintiff as purchaser and defendants as sellers. Defendants, by their answer, asked for a judgment declaring the contract to be null and void because of plaintiff's failure to make payments required of him. Plaintiff appeals from a judgment in favor of defendants.

The negotiations resulting in the contract under consideration began in 1971 when the parties executed an option wherein plaintiff was to purchase a portion of the property involved. Plaintiff made three payments of $7,500 each on the option. In 1974 the parties executed a contract of sale regarding the entire property. Plaintiff-purchaser did not make the first payment of $62,400 due in November, 1975, and the parties terminated the contract by agreement. In November, 1975, the parties executed a new agreement and plaintiff paid $10,000 down. The total purchase price was $350,000, payable over six years, beginning with a payment of $62,400 plus interest on or before November 15, 1976. The contract provided for release of parcels of the property upon certain payments being made.

The contract also provided for certain remedies to be available to the vendors in the event of a default by plaintiff:

"* * * [I]n case the second party shall fail to make the payments aforesaid, or any of them, punctually and upon the strict terms and at the times above specified, or fail to keep any of the other terms or conditions of this agreement, time of payment and strict performance being declared to be of the essence of this agreement, then the first party shall have the following rights:

"1. To declare this contract null and void.

"2. To declare the whole unpaid principal balance of said purchase price with the interest thereon at once due and payable, and/or

[777]

"3. To foreclose this contract by suit in equity, and in any of such cases, all the rights and interest hereby created or then existing in favor of the second party derived under this agreement, shall utterly cease and determine, and the premises aforesaid shall revert and revest in the first party without any declaration of forfeiture or act of re-entry, or without any other act by first party to be performed and without any right of the second party of reclamation or compensation for money paid or for improvements made as absolutely, full and perfectly as if this agreement had never been made."

On October 20, 1976, plaintiff advised defendants by mail that he was having difficulty in securing a bank loan on lots being developed and "at this writing I don't feel I could make the payment" due on November 15, 1976. The payment was not made by November 15.

On November 22, 1976, defendants wrote to plaintiff stating that "we hereby declare this contract null and void, effective this date."

On or about December 28, 1976, by letter addressed to Title Insurance Company of Oregon, plaintiff delivered to it his personal uncertified check in the sum of $86,900 (representing the initial principal payment and accrued interest) payable to defendants, together with a description of certain real property, with the following instructions:

"You are instructed to deliver the check to Mr. and Mrs. Wilcox upon deposit for recording a Warranty Deed from Glenn H. and Joan M. Wilcox, husband and wife, to Fred Elsasser, Jr., covering the property described and referred to above."

It was stipulated by the parties that:

"The acreage designated for release by plaintiff has improvements located thereon having an appraised value for tax purposes of $39,140.00. The contract provides that the payment required for release of any designated acreage shall include, in addition to the land price computed by formula, the

then appraised value for tax purposes of said improvements. No tender other than that described in [the letter dated December 28, 1976] has been made to defendants."

On January 3, 1977, defendants' counsel wrote to plaintiff, stating again that the contract is "hereby declared null and void effective this date." [1]

On these facts, the trial court entered a judgment declaring the contract to be terminated. Plaintiff appeals, contending that defendants' declaration of forfeiture was ineffective because defendants did not give plaintiff notice and an opportunity to cure the breach.

This court has held in numerous cases that where a contract gives a vendor alternative remedies upon default by the purchaser, notice and an opportunity to cure the default is required by law. *Roth Develop. v. John Gen'l Contr.,* 263 Or 561, 503 P2d 493 (1972); *Morrison v. Kandler,* 215 Or 489, 334 P2d 459 (1959); *Howard v. Jackson,* 213 Or 447, 324 P2d 757 (1958); *Zumstein v. Stockton et ux,* 199 Or 633, 264 P2d 455 (1953); *Grider v. Turnbow,* 162 Or 622, 94 P2d 285 (1939); *Epplett v. Empire Inv. Co., Inc.,* 99 Or 533, 194 P 461, 194 P 700 (1921). The source of the rule requiring notice when the vendor has "options" was first stated in *Epplett v. Empire Inv. Co., Inc., supra:*

" * * * Since contracts like the one here are not self-executing, *the law by implication introduces into such contracts a provision that the right of forfeiture should be exercised only after first giving notice* for a reasonable period of time, * * * and, therefore, the right to forfeiture can not be fully exercised unless: (1) the vendor gives reasonable notice; and (2) the purchaser fails to pay within the time fixed by the notice. * * *." 99 Or at 541-42 (emphasis added).

In *Zumstein v. Stockton, supra,* we considered a contractual provision quite similar to the present one.

---

[1] We note that the letter also advised plaintiff that "foreclosure proceedings may be necessary" in the event plaintiff did not execute a quitclaim deed.

The contract in *Zumstein* gave the vendor alternative rights in the event of default by the purchaser, one of which was the "right to declare the agreement null and void." We said:

"* * * Under any contract which gives the vendor a right to declare a forfeiture, that is, a right which he may but need not exercise, the forfeiture can be effectuated only after reasonable notice given. This must be done whether or not the time-essence clause has been waived. *Epplett v. Empire Investment Co.,* 99 Or 533, 194 P 461; *Grider v. Turnbow, supra* [162 Or 622, 94 P2d 285 (1939)]. A forfeiture under a land contract such as the one at bar is not automatic on the occurrence of default. The contract gave the vendor the 'right to declare this agreement null and void or foreclose by strict foreclosure in equity.' Since the vendor had alternative rights the forfeiture could not be automatic. Some action by the vendor would be required to manifest his choice between the alternative rights, *and this must be true regardless of the additional provision that in either of such cases 'all the right * * * of the second party * * * shall utterly cease * * * and the premises aforesaid shall revert and revest in the first party without any declaration of forfeiture or act of re-entry, or without any other act * * *.' * * * *"* 199 Or at 642. (Emphasis added.)

The defendant relies on *Edwards v. Wirtz,* 167 Or 625, 118 P2d 114 (1941), and *Maffet v. Or & Cal R. Co.,* 46 Or 443, 80 P 489 (1905). It is questionable whether those cases actually stand for the proposition that a forfeiture provision may operate without notice to the defaulting vendor.[2] We need not decide that matter, however, because those cases, unlike the present case, did not involve contracts in which the vendor had alternative remedies upon default, and therefore do not control the present case.

[2] In both *Edwards* and *Maffet,* the court found that the forfeiture provision had been waived. Consequently, the court did not have to decide whether or not a forfeiture could occur without notice and a reasonable opportunity to cure. *See also,* Spencer, *Remedies Available Under a Land Sale Contract,* 3 Will L J 164, 180 n. 134 (1965), where the author suggests that under cases decided subsequent to *Edwards,* the forfeiture provision in that case would not have been construed as self-executing.

■■ We hold that our decision in this case is controlled by our previous decisions in *Zumstein* and *Roth,* and that a declaration of forfeiture under the terms of a contract such as this is effective only if the vendor first gives the purchaser notice and an opportunity to cure the breach.[3] The defendants in the present case did not provide plaintiff with such notice, but instead wrote plaintiff on November 22, 1976, stating that the contract was "null and void, *effective this date.*" (Emphasis added.) We have held that such a notice declaring that a forfeiture is then effected rather than stating that a forfeiture will be effected in the future unless payment is made within a prescribed time is a breach of the implied stipulation to give reasonable

---

[3] The author of this opinion, speaking for himself only and not for the other members of the court, questions whether or not forfeiture provisions should be given effect even where the purchaser has notice and an opportunity to cure the breach. In my view, a strong argument can be made that forfeitures may constitute penalties for breach of contract, since the vendor's remedy upon default by the purchaser may bear no reasonable relation to anticipated damages. *See* Corbin, *The Right of a Defaulting Vendee to the Restitution of Instalments Paid,* 40 Yale L J 1013, 1029 (1931); Note, *Forfeiture and the Installment Land Contract,* 35 Brooklyn L Rev 83, 87 (1968) ("we are left with the cold proposition that the more one tries to meet his obligation, the more severely will he be punished for his breach"). This court has long subscribed to the rule that contractual provisions imposing a penalty upon a breaching party are void as against public policy. *Dean Vincent, Inc. v. McDonough,* 281 Or 239, 574 P2d 1096 (1978); *Wright v. Schutt Construction,* 262 Or 619, 500 P2d 1045 (1972); *Harty v. Bye,* 258 Or 398, 483 P2d 458 (1971); *Medak v. Hekimian,* 241 Or 38, 404 P2d 203 (1965).

The argument that "freedom of contract" requires judicial recognition of forfeiture provisions is, in my opinion, a false issue. Freedom of contract has never been interpreted to mean that parties should be allowed to determine their own remedies. As Calamari & Perillo have observed, "Remedies are provided by the state and are defined by public rather than private law." Calamari & Perillo, The Law of Contracts 564 (2d ed 1977). *See also,* Macneil, *Power of Contract and Agreed Remedies,* 47 Cornell L Q 495 (1962).

In *Stinemeyer v. Wesco Farms, Inc.,* 260 Or 109, 487 P2d 65 (1971), this court stated: "It has been our policy to encourage sellers of land to enforce their contracts in equity when the purchaser has defaulted in his performance." 260 Or at 115-16.

As of 1978, thirteen states had enacted legislation regulating the conditions under which forfeiture will be permitted, and four states had attempted to eliminate the harsh nature of the forfeiture remedy. Comment, *Remedying the Inequities of Forfeiture in Land Installment Contracts,* 64 Iowa L Rev 158 (1978).

notice and does not effect a forfeiture. *Morrison v. Kandler, supra; Howard v. Jackson, supra; Epplett v. Empire Inv. Co., Inc., supra.*

Because the defendants did not give plaintiff notice that a forfeiture will be effected and an opportunity to correct the default during the period given in the notice before declaring a forfeiture, the defendants are not entitled to prevail.

Reversed. No costs to either party.

DENECKE, C. J., specially concurring.

I concur in the decision of the majority that the purchaser is entitled to notice of default and a reasonable opportunity to cure the default. I concur specially to state that in my opinion the rule of nonforfeiture should apply whether the contract gives the seller alternative remedies or only the right to declare the contract null and void and that any interest of the purchaser be forfeited.

The rationale of our past cases and the present decision is that courts will not permit a purchaser to lose his interest in the property without requiring notice of the default and giving an opportunity to remedy the default. This rationale will not permit the enforcement of the forefeiture whether the seller has alternative remedies or only the remedy of forfeiture.

LINDE, J., specially concurring.

The parties to this business transaction in real estate agreed that if the buyer failed to make payments when due, the seller could, among other remedies, "declare this contract null and void." The Court now denies enforcement of this agreement on the basis of precedents which declare that when a

[782]

seller has reserved a choice of remedies in the contract, he must give the buyer notice and an opportunity to make the overdue payments before he can effectively end the transaction. I entirely join in Justice Holman's criticism of that rule. But since I also agree with him that it is the rule stated by the precedents cited by the Court, although they might perhaps be distinguished, I concur in the result in this case.

The Court's quotation from *Epplett v. Empire Inv. Co., Inc.,* 99 Or 533, 194 P 461, 194 P 700 (1921), shows that it has long been a rule embarrassed for a reason. The quotation states that, "[s]ince contracts like the one here are not self-executing, *the law by implication introduces into such contracts a provision"* for notice and a reasonable time to pay before "forfeiture" (emphasis added). One might think that after half a century the fiction of "the law" introducing imaginary terms into a contract by implication has become archaic. But the old fiction reflects an ambivalence that has not been resolved: Whether the rule against terminating a contract for lack of timely payment is irrevocably imposed by law or whether it arises from the use of certain conventional contract terms and can be avoided by mutual agreement freshly expressed in other terms. It reflects the tension between the usual freedom of consensual, arm's-length business agreements and the urge to protect parties against the untoward consequences of such agreements. The question has practical importance and eventually deserves a less equivocal resolution than this decision can provide. The terminology of the present rule obscures rather than explains what may or may not be accomplished by a clearly drafted agreement.

First, the terminology quoted in the Court's opinion speaks of a difference between "self-executing" provisions and those which, like the provision before us, are not self-executing. The relevance of the distinction to the reason for the rule is not obvious. But the present rule, by its terms, appears to require prior notice to the

buyer and opportunity to pay when the contract allows the seller "to declare" the contract at an end but not when the contract provides that nonpayment ends the contract by its own force without further notice or declaration by the seller. The distinction invites new "self-executing" contract terms in which the parties agree that the buyer's failure to pay will terminate his rights without further notice unless the seller at his own option affirmatively waives the delay, with unpredictable results.

Second, the rule is said to apply when the seller has reserved a choice of remedies but not when the contract only provides that he may declare it terminated for nonpayment. The explanation quoted by the majority from *Zumstein v. Stockton,* 199 Or 633, 264 P2d 455 (1953), purports to derive this distinction from the seller's obligation to let the buyer know what he chooses to do about the default, but Justice Holman's dissent in this case shows the fallacy of that explanation. Moreover, even if a clause that gives a party a choice of action logically implies that he will give the defaulting party notice of his choice, it does not explain why he must also give him additional time to cure the default or why the parties cannot expressly agree that the defaulting party disclaims such additional time.

Finally, if the rule represents a judge-made policy against "forfeitures," as the Chief Justice and Justice Howell, speaking for himself, would prefer, then its present form is an illogical, haphazard, and misleading means to its end. A buyer who cannot meet a payment when he knows that it is due, as this buyer wrote his seller that he could not, still faces a possible forfeiture if he is given notice and an extra few days in which to pay. The requirement at most protects against a failure to make timely payment due to mistake, delay in transmission, or other excusable obstacles consistent with a buyer's present readiness

[784]

to perform under the contract. That function of requiring notice may well be worthwhile. But the rule does not protect against forfeiture when the buyer does not have the money and cannot raise it.

Nor do our cases inspire confidence that a more rational policy toward contract termination clauses can be developed through case by case litigation spread over several decades under a variety of provisions and transactions. Too many potential variables bear on the choice of policy. Courts do not judicially know enough of the practical effects of sellers' remedies in changing markets, and decision on the facts of one transaction does not allow systematic consideration of different transactions. Should the rule be the same for commercial real estate transactions negotiated at arm's length among businessmen as for residential sales, perhaps on a form contract? Should it matter why the buyer defaulted, or how large a proportion of the price he had paid? If he must be allowed time to cure the default, how must notice be given, and how much time?

These are proper questions for legislative determination. If some rights of purchasers are to be placed beyond private agreement, the answers should not depend on a draftsman's choice between contract clauses nor on such favored judicial adjectives as a "reasonable" time for payment; rules for business transactions should preferably not demand settlement by litigation. I would therefore join Justice Holman's dissent but for the fact that the established doctrine governs this case.

**HOLMAN, J.,** dissenting.

There is no doubt but that the majority opinion is fully justified by the prior decisions of this court. However, these decisions are without a logical rationale. They lay down the rule that *where alternate*

*remedies are provided* by the contract, one of them being a provision for immediate forfeiture upon notice by the seller, notice of impending forfeiture and an opportunity to cure the default must be given. This rule necessarily implies that if the provision for strict forfeiture had been the *only* remedy provided by the contract, no notice and opportunity to cure the default would be necessary. The purchaser has notice in either case at the time of the signing of the agreement that he is subject to strict forfeiture upon default at the will of the seller. It would be just as logical under the majority's rationale to say, in the case of a contract with only a strict forfeiture remedy, that because the seller *has the option* either to declare an immediate forfeiture or not, notice and an opportunity to cure the default must be given.

The true issue is whether the court, regardless of contractual provisions, is going to allow the remedy of immediate forfeiture. This issue has been and still is being dodged by this court under the guise of a rule that has no logical sustenance. I, for one, would allow the parties to enter into such a contract if they so chose.

The majority's opinion has a logical result which is not discussed. The rule requires that the purchaser be given an opportunity to *cure the default.* This contract had, in addition to provisions for forfeiture upon notice from the seller and foreclosure by a suit in equity, a provision by which the seller could declare the entire unpaid purchase price immediately due and payable. If notice and opportunity to cure the default are the rights of a purchaser where there are alternative remedies, these rights must also be available whenever an attempt is made to enforce any form of foreclosure which is more stringent, whether it be an immediate forfeiture by notice or *a demand for the payment of the entire purchase price.*

The result of all this court interference is going to be that purchasers will no longer have the opportunity

to purchase property with a small down payment because sellers will be foolish to sell under those conditions when no summary method of foreclosure is available to them. I doubt that this is advantageous to impecunious purchasers as a class.