Argued and submitted January 30, affirmed November 16, 1981,
reconsideration denied January 14,
petition for review denied February 10, 1982 (292 Or 568)

## BRAUNSTEIN et al,
*Respondents - Cross-Appellants,*

*v.*

## TROTTIER et al,
*Appellants - Cross-Respondents,*

### (40-465, CA 18266)

635 P2d 1379

Henry Kane, Beaverton, argued the cause and filed the briefs for appellants - cross-respondents.

Margaret H. Leek Leiberan, Portland, argued the cause for respondents - cross-appellants. With her on the briefs was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

This ejection action requires that we attempt to determine whether the Supreme Court has been engaged in something akin to a fan dance, or whether it really intends to tango. The issue is whether the vendor under a land sale contract, which permits, among other remedies, a declaration of forfeiture upon the vendee's default, may effectively terminate the vendee's interest in the real property and to the purchase money theretofore paid by giving reasonable notice of intention to do so, followed by a declaration of such forfeiture and by the filing of an action in ejectment to regain possession of the property. The trial court held that the plaintiff vendors could do so and entered judgment accordingly. Defendants who are vendees appeal.[1]

Although the issue appears to be narrow, the problem of which it is a part is not. The rights, duties and interests of the parties to a land sale contract are, for the most part, creations of the courts. They have evolved piecemeal and, perhaps for that reason, not necessarily harmoniously, particularly when viewed in the overall context of security devices available to vendors of real property — mortgages, trust deeds and land sale contracts. The first two of those security devices are controlled largely by statute; the third is not. Each has its place in a vendor-financed transaction with differing rights and interests; the extent to which those differences exist, or ought to be extended, is the problem.

Usually, but not always, the vendor determines the security device for assuring payment of the purchase price. There are many reasons why a vendor would choose a land sale contract: historically, because of the variety of remedies which the contract may provide (*e.g.,* forfeiture, strict foreclosure and specific performance), it may be more appealing; until recently, there was no requirement that the

---

[1] The other defendants, who did not appear in this court, are: Dale Miller and Loretta Miller, who entered into an earnest money agreement with defendants Trottier to purchase the real property involved; Douglas Thompson, trustee under a deed of trust covering the real property to secure a loan from defendant Western Savings and Loan Association to plaintiffs, which went into default in January, 1980, after defendants Trottier failed to pay the balance due under the land sale contract here in dispute.

Plaintiffs filed a cross-appeal, which was withdrawn prior to oral argument.

contract be recorded, so if the vendee abandoned the premises, no judicial proceeding was necessary to clear the title (*but see* ORS 93.635[2]); statutory redemption rights did not apply to strict foreclosures, the vendee's only right to redeem being a matter of equity fashioned by the court in the decree; through specific performance, rather than strict foreclosure, the vendor could be entitled to a deficiency judgment.

That flexibility is not available with a mortgage or deed of trust. However, a purchaser who makes a substantial down payment might successfully demand that the balance be secured by a purchase money mortgage, which may be enforced only by foreclosure and cannot result in a deficiency judgment (ORS 88.070[3]), and the debtor would have the statutory right to redeem for one year. ORS 23.560(1).[4] If a deed of trust is used, the seller, as beneficiary, may proceed expeditiously by exercising the right of sale, but must deal with the buyer's right to cure the default up to five days prior to the sale, and would be limited in that event to the statutory amount of attorney fees and trustee's fees. Further, if there are questions regarding priority, he would be required to foreclose the deed of trust as a mortgage.

---

[2] ORS 93.635 now requires land sale contracts to be recorded.

[3] ORS 88.070 provides:

"When a decree is given for the foreclosure of any mortgage given to secure payment of the balance of the purchase price of real property, the decree shall provide for the sale of the real property covered by such mortgage for the satisfaction of the decree given therein, but the mortgagee shall not be entitled to a deficiency judgment on account of the mortgage or note or obligation secured by the same."

[4] ORS 23.560(1) provides:

"(1) The mortgagor or judgment debtor whose right and title were sold, or his heir, devisee or grantee, who has acquired by inheritance, devise, deed, sale, or by virtue of any execution or by any other means, the legal title to the property sold, may, at any time within one year after the date of sale, redeem the property; provided that a transfer of the judgment debtor's interest in the property, either before or after sale, shall preclude him from the right to redeem unless the proceeds from the sale are insufficient to satisfy the judgment, in which event the judgment debtor shall have the right to redeem at any time within 10 days after the year herein allowed for redemption, and not otherwise."

Because it is not this court's function to survey the entire field of law in which the problem presented falls, we will not attempt to do so here. However, as we noted at the outset, we detect some ambivalence in the Supreme Court opinions dealing with the question of non-judicial forfeiture as a contract vendor's summary remedy. As Justice Holman said in his dissent in *Elsasser v. Wilcox,* 286 Or 775, 596 P2d 974 (1979):

> "The true issue is whether the court, regardless of contractual provisions, is going to allow the remedy of immediate forfeiture. This issue has been and still is being dodged by this court under the guise of a rule that has no logical sustenance. * * *" 286 Or at 786.

We also sense that the nature of a land sale contract and its place in the scheme of vendor-financed real estate transactions may have been overlooked in the piecemeal adjudication of specific disputes. For those reasons, we consider it necessary to see where we are before proceeding with the disposition of this case.

■      To begin with, it is worth mentioning that a land sale contract is not just a contract between two parties; it affects the land to which it relates. It is primarily a security device, and after the parties have signed the contract, the vendor, although still the legal title holder of the property, holds an encumbered title charged with the equitable interest of the vendee. *Panushka v. Panushka,* 221 Or 145, 349 P2d 450 (1960). The vendee's interest may, for example, be assigned or mortgaged, and the equitable estate may be foreclosed. *Young v. Clay,* 139 Or 427, 10 P2d 602 (1932). The vendor under the contract is said to have a vendor's lien on the property. *Grider v. Turnbow,* 162 Or 622, 641, 94 P2d 285 (1939); *but see Savings Co. v. Mackenzie,* 33 Or 209, 52 P 1046 (1898).

Basically, then, the question is:   What are the rights of the vendor under that lien? The specially concurring opinion of Justice Linde and the dissenting opinion of Justice Holman in *Elsasser v. Wilcox, supra,* seem to say that the parties could agree that, in the event of a default by the vendee, all interest of the vendee terminates forthwith without any notice or action by the vendor, and all amounts paid by the vendee are thereby forfeited and the

contract terminated by its own terms without judicial intervention or supervision. That kind of provision in a land sale contract does not sound like a remedy to enforce a lien, and we know of no cases which have sanctioned that result. (*But see Sievers v. Brown,* 34 Or 454, 460, 56 P 171 (1899), where the court, in a different context, recognized a forfeiture on breach without an express agreement, notice or declaration, apparently as a matter of law.) Rather, such a provision sounds more like an option which is irrevocable so long as the optionee makes the required payments, but terminates forthwith upon his failure to do so. An option to purchase real property, however, is not the same animal as a land sale contract, and there is no reason, from either a legal or practical standpoint, to blur the differences. Each has its useful place.

■     To make the point more dramatically, albeit in a different context, if the owner of real property executes and delivers a deed, absolute on its face, to another to secure a debt, with the express understanding that if the grantor pays the debt the property will be reconveyed, but that if he defaults absolute title shall vest in the grantee without further action by either party, the transaction is treated as a secured transaction, and the deed is treated as a mortgage. The grantee must enforce his rights by way of judicial foreclosure, as a result of which the grantor is entitled to the statutory redemption rights. *Libel v. Pierce,* 147 Or 132, 31 P2d 1106 (1934); *but see Herrmann v. Churchill,* 235 Or 327, 385 P2d 190 (1963). If that kind of forfeiture may not be enforced by the secured party according to the express terms of the agreement, why, then, should a forfeiture under a land sale contract be so enforced?

■     One might answer that question by suggesting that the difference between the two transactions is that one involves a contract and the other an instrument deemed to be a mortgage. That distinction, however, is not persuasive, because neither purports to be a mortgage, both contain contractual agreements, including the right to a forfeiture on default, and both are transactions secured by real property. It is true, however, that once an instrument is considered to be a mortgage, it is controlled by statute rather than by judicial rules. For example, the court has held that a land sale contract may be specifically enforced, rather than

strictly foreclosed, if the vendor desires to obtain a deficiency judgment, and that ORS 88.070, prohibiting deficiency judgments in the foreclosure of purchase money mortgages, does not apply to land sale contracts. *Renard v. Allen,* 237 Or 406, 391 P2d 777 (1964). In that context the court has attempted to draw a clear distinction between the two types of vendor-financed transactions. However, one might wonder why the legislative policy against permitting the seller, secured by a mortgage, to collect more from the buyer than the property is worth should not apply with respect to enforcement of a land sale contract in equity.

■         Passing that question, ought there to be a difference between a noteholder secured by mortgage suing on the note (which may be done by a purchase money mortgagee, as well as by other mortgagees) and a vendor suing on the contract, where both are suing for the unpaid debt or price rather than foreclosing? Under the court's decisions there may be substantial differences. If the noteholder brings an action on the note and obtains a judgment, the debt is merged into the judgment, and the only lien he has is a judgment lien, the priority of which is determined by the date of the judgment; the mortgage no longer secures it, and the priority of the mortgage is lost. However, a vendor under a land sale contract may do the functional equivalent of that by a suit for specific performance: he may obtain a money judgment against the vendee, retain the vendor's lien (and, apparently, its priority) on the property, have the property sold if the judgment is not paid within the time specified and obtain a deficiency judgment if the sale proceeds do not satisfy the judgment. *Renard v. Allen, supra.* In other words, the vendor has the best of all worlds — *unless* the vendee (judgment debtor) is entitled to redeem under the statutory right of redemption (ORS 23.560), a question which has not been decided in Oregon. If the vendee has that right of redemption, the vendor might prefer strict foreclosure to specific performance, because, typically, the period for redemption provided in a strict foreclosure decree is substantially shorter than the one year provided by statute following execution sales.

Although the foregoing discussion is neither complete nor indepth, it is sufficient to suggest that the courts may have turned a useful device, intended to create a

vendor's lien to secure payment of the balance of the purchase price, into a security device so overweighted in favor of the vendor that it may make the land sale contract too oppressive to be a useful device.[5]

In his specially concurring opinion in *Elsasser v. Wilcox, supra,* Justice Linde suggested that the questions involved are proper ones for legislative determination. However true that may be, the legislature has not acted, but has left this judicial creature to its creators. There are, of course, advantages in the legislative forum, where different interest groups may be heard and where compromises and trade-offs may be effected. An example of that process is the legislative treatment of deeds of trust: the principal trade-off there lies in permitting the secured party (beneficiary) to realize on his security by a trustee's sale, without concern for redemption rights, in exchange for giving up the right to a deficiency judgment. ORS 86.770. There appear to have been no trade-offs for the vendee under a land sale contract as the vendor's rights thereunder seem to be evolving. If there is a trade-off, it is inadvertent and lies in the pitfalls which might belay an unwary vendor simply because his rights are not as clear as they need be to permit their exercise with confidence. That kind of advantage ought not to be the bargain fixed by the courts.

That brings us back to the problem at hand — a vendor's right to declare a complete forfeiture on the vendee's default without judicial intervention. The Oregon cases have paid lip service to the existence of that right. In *Nygaard et ux v. Anderson,* 229 Or 323, 330-31, 366 P2d 899 (1961), a strict foreclosure case, the court said:

> "* * * Vendors' remedies upon default by the purchaser fall into either one of two classes; (1) remedies consistent only with the affirmance of the contract, or (2) remedies consistent only with the repudiation of the contract. If the vendor seeks to recover the installments due on the contract or brings suit for specific performance or brings suit for strict foreclosure [footnote omitted] he has elected to

---

[5] If all land sale contracts were negotiated by lawyers, there might be some justification for requiring the parties to abide by whatever is agreed upon, no matter how onerous. Typically, however, as here, the parties use a standard printed form.

affirm and enforce the contract. On the other hand, if he brings an action of ejectment or takes possession of the premises under circumstances indicating an intent to deprive the purchaser of possession under the forfeiture and right of entry provision of the contract, the vendor has elected to regard the contract as no longer continuing."

In another strict foreclosure case, *Zumstein v. Stockton et ux.*, 199 Or 633, 643, 264 P2d 455 (1953), the court stated:

"* * * The option to declare a forfeiture gives to the vendor rights strictly legal in nature. It may be accomplished after reasonable notice by lawfully taking possession of the property or by bringing an action in ejectment. * * *"

At least one case recognized a forfeiture in a quiet title suit. *Williams v. Barbee,* 165 Or 260, 282, 106 P2d 1033 (1940).

■          Later, however, in *Stinemeyer v. Wesco Farms, Inc.*, 260 Or 109, 487 P2d 65 (1971), the court stated:

"It has been our policy to encourage sellers of land to enforce their contracts in equity when the purchaser has defaulted in his performance. * * *" 260 Or at 115-16.

The court's latest pronouncement is contained in *Elsasser v. Wilcox, supra,* in which a majority of the court recognized that a forfeiture provision in a land sale contract may be enforced summarily and without judicial intervention. However, where, as in *Elsasser* and here, the contract gives the vendor alternative remedies upon default, the declaration of forfeiture is not effective unless the vendor first gives the vendee reasonable notice and an opportunity to cure the breach prior to declaring the forfeiture. In *Elsasser,* the court refused to enforce a declaration of forfeiture, because "the [vendors] did not give [vendee] notice that a forfeiture will be effected and an opportunity to correct the default during the period given in the notice before declaring a forfeiture, * * *." 286 Or at 782.

The problem with the notices given by the vendors in *Elsasser,* as we understand it, was that neither gave the vendee a specific time period within which the default could be cured. The first notice was given one week after a substantial payment was due, but was not paid; it stated that "we hereby declare this contract null and void effective this date." 286 Or at 778. A subsequent notice given

more than five weeks later stated the same thing, but it also advised the vendee that foreclosure proceedings may be necessary in the event vendee did not execute a quitclaim deed. There appears to have been no doubt on the part of the vendee that the axe was about to fall. After the first notice, and before the second, the vendee tendered in escrow an amount which would have been sufficient to cure the default but for instructions requiring a lot release before the money could be delivered to the vendors. A few days later, the second notice declaring a forfeiture was sent. On those facts, it is at least arguable that the vendee had both notice and was given a reasonable time, albeit the time period was not specifically stated in the notice.

The author of the majority opinion in *Elsasser*, speaking for himself only (286 Or at 775, n 3), questioned whether a forfeiture provision should ever be given effect, even where the purchaser has notice and an opportunity to cure the breach.[6] At the other extreme, Justice Holman, in his dissent,[7] expressed the view that the rule enunciated by the majority, although supported by prior decisions, made no sense. He would enforce a contract provision authorizing the summary remedy of immediate forfeiture on default without notice and opportunity to cure the default. He went on to state that the result of the court's decision would be that purchasers will no longer have the opportunity to purchase property with a small down payment, because sellers would be foolish to sell under those conditions "when no summary method of foreclosure is available to them." 286 Or at 787. That reason appears to us to be an overstatement:   The question presented in *Elsasser* was whether the vendors could declare an immediate forfeiture without any judicial intervention, not whether they could strictly foreclose the contract through judicial proceedings.

---

[6] The majority recognized an apparent distinction between contracts which provide only for forfeiture upon default, in which case prior decisions indicated, but did not hold, that no notice and opportunity to cure was necessary to effectuate a forfeiture, and contracts which give the vendor alternative remedies and require notice and opportunity to cure as a condition to effective forfeiture. Chief Justice Denecke, specially concurring, would apply the notice requirement to both kinds of contracts.

[7] Justice Linde, specially concurring in *Elsasser*, expressed general agreement with the dissenting views of Justice Holman, but concluded that because of prior decisions of the court the majority opinion was correct.

In the case at bar, the parties executed a land sale contract in October, 1978, the terms of which provided for a total payment of $74,500, payable in 13 monthly installments with a final balloon payment of the entire contract balance, $64,109.84, on December 1, 1979.[8] The contract contained alternative remedies on default, but provided a ten-day grace period during which a default could be cured to avoid the consequences of the default, including a forfeiture.

Appellants did not designate the transcript of testimony as part of the record on appeal, so our review is limited. However, the facts material to the validity of the declaration of forfeiture are admitted, and the vendees do not assign error to any of the trial court's findings of fact. If forfeiture was permitted under the facts and the law, the vendees' assignments of error are either irrelevant or may receive only limited review on this record. *Reeder v. Kay*, 276 Or 1111, 557 P2d 673 (1976).

Defendant John A. Trottier (one of the vendees) was a licensed real estate salesman. Prior to the execution of the contract, he informed plaintiffs of their right to declare the contract null and void if the vendees failed to make the final payment by December 1, 1979. On several occasions after the contract was signed, the vendors made it clear that they would insist upon strict compliance with the terms of the contract requiring final payment on December 1. On November 7, 1979, vendors delivered a letter to vendees stating that they expected the contract to be paid off on or before December 1 and that they would not renew or extend the contract. On November 26, vendors' attorney wrote the vendee's attorney outlining several existing breaches of the contract and expressing his understanding that payment of the balance due under the contract would probably not be made when it was due. The letter concluded with the statement that the vendors insisted upon either prompt payment in full or restoration and delivery of the premises to the vendors.

On December 14, vendors' attorney sent another letter to the vendees explaining that under the terms of the

---

[8] As of December 1, 1979, vendees had paid a total of $17,358.22, including interest at 10 percent, under the contract.

agreement a final payment of $64,109.84 was to be paid by December 1 and that it had not been made. The letter went on to state that because the payment was over ten days past due, the vendees were in default and notified them that unless the full balance was paid by December 24, 1979, the vendors would declare the contract null and void and "effect a forfeiture on December 24, 1979." Final payment was not made by December 26, 1979, whereupon the vendors exercised their right to declare the contract null and void.

On January 14, 1980, this action for ejectment was commenced. The trial court concluded that the vendors had given reasonable notice of their intention to declare a forfeiture and were entitled to possession of the real property and that the vendees were wrongfully withholding possession from the vendors. Those conclusions are supported by findings of fact and support the judgment, if the vendors had a right to declare a forfeiture.

■■■ We conclude that the vendors did everything that was required of them under *Elsasser*[9] and, therefore, were entitled to declare the contract null and void, which they did on December 26. Given that conclusion, the vendees' first assignment of error — that the trial court erred in refusing to give them a reasonable time to pay off the contract — misses the point. The argument assumes that this proceeding is one to foreclose the contract. It is not; it is an action at law in ejectment. Their second assignment of error is that the court erred in dismissing their counterclaim for specific performance. They concede, however, as the trial court found, that at no time prior to the vendors' declaration of forfeiture were they ready, willing and able to perform under the contract. Further, on this record, there is no evidence that the vendees could do so at the time

---

[9] An obvious problem with a summary declaration of forfeiture is that the reasonableness of the time given to cure the default will almost always be open to doubt until a court rules on the question after the fact in the ensuing ejectment proceeding. We are not aware of any guidelines for determining reasonableness. If foreclosure proceedings were required, that problem would not exist; the court could determine what would be a reasonable time within which the vendees must pay up or be foreclosed of any interest in the property (*e.g.,* forfeiture). That is the function of the "equity of redemption"; it permits judicially determined flexibility to achieve equity under all of the circumstances, as opposed to the vendor's unilateral determination.

of trial even if the contract had not been validly terminated.

■ In their third assignment of error, vendees contend the trial court erred in refusing to recognize their equitable defenses. As best we can determine, the argument is that the vendors refused a tender, thus excusing vendees' non-performance. The most that can be said is that on January 18, 1980, after this action was commenced, a partial tender was made in escrow and refused by the vendors. There was no error.

Basically, the vendees contend they could have fully performed, if given more time, and that they should be entitled to the same benefits to which they would have been entitled in a strict foreclosure proceeding. If we were writing on a clean slate, we would hold that a vendor's lien under a land sale contract may be enforced only through judicial proceedings, absent a voluntary relinquishment by the vendee of whatever rights he has in the property. By requiring a judicial proceeding, the adequacy of any notice required would be subject to judicial scrutiny and, even though the vendee may end up losing the property and all he has paid in, the harshness of that result could be tempered by the court's granting a period of time during which the vendee might exercise his equity of redemption, yet still protecting the vendor's right to be paid in full or to a return of the property. However, the vendors here were entitled to rely on *Elsasser,* and we are obliged to follow it.

From what we have said, it is apparent that we have concluded that, although much of what the Supreme Court has said and done with respect to the nature of a vendor's interest under a land sale contract, particularly relating to non-judicial forfeitures, bears a resemblance to a fan dance, the court in *Elsasser* indicated it intends to tango. So we pick up that beat, although reluctantly. Whether, and how, the law is to be changed is up to that court.

The judgment of the trial court is affirmed.