Argued and submitted July 13, 1981, affirmed as
modified February 22, reconsideration denied April 1,
petition for review denied May 18, 1982 (293 Or 146)

FRAZIER et ux,
*Respondents,*

*v.*

JACKSON,
*Appellant,*

(No. 80-4-387, CA 19067)

641 P2d 64

Peter H. Wells, Pendleton, argued the cause for appellant. With him on the briefs was Rustin A. Brewer, Pendleton.

Garry L. Reynolds, Hermiston, argued the cause for respondents. With him on the brief was Morrison, Reynolds & Bloom, P. C., Hermiston.

Before Gillette, Presiding Judge, and Young, Judge, and Roberts, Judge Pro Tempore.*

ROBERTS, Judge Pro Tempore.

---

* Appointed to Supreme Court February 8, 1982.

**ROBERTS, J.,** Pro Tempore.

Appellant appeals from a decree of strict fore-closure of a land-sale contract and alleges that the trial court erred in 1) ordering foreclosure and 2) ordering strict foreclosure rather than foreclosure by sale, if the order for foreclosure was proper. The case was tried to the court sitting in equity. We review *de novo*, ORS 19.125(3), and affirm.

Appellant is the vendee's subassignee of a land-sale contract for property in Hermiston. Respondents are the vendors and live in Idaho. They sold the property by land-sale contract in 1976 to Robert B. Lilly, who conveyed his vendee's interest to Robert A. Lilly in 1978 by quitclaim deed. Robert A. Lilly conveyed the vendee's interest to appellant on January 29, 1980, by warranty deed. Appellant expressly assumed and agreed to pay the contract. The form contract provided that time was of the essence and that buyer agreed to make timely payments on the contract, to pay taxes, to insure the property, to keep the property free of liens, and not to suffer waste; upon buyer's default in any obligation and failure to cure within 10 days, sellers had the option to declare the contract void, to accelerate the unpaid principal "and/or" to obtain strict foreclosure by suit in equity.

Respondents and Robert B. Lilly had set up an escrow account at a local bank, which they agreed would be the collection agent. Robert A. Lilly had defaulted in every respect, including by making payments to the escrow account as much as five months late. Respondents were unaware of those late payments until December, 1979, when they contacted the bank. Respondents tried unsuccessfully to locate the original buyer and were actually unaware of any assignment until February or March, 1980, although the assignments had been recorded.

Robert A. Lilly's other defaults included wasting of the property, failing to pay taxes (which resulted in both federal and state tax liens against the property), and allow-ing insurance to lapse. Appellant was aware of the liens and waste and, to satisfy its purchase agreement and the land-sale contract, sought to cure these problems by: obtaining an insurance binder effective before closing for

part of the property, later increased to cover all property; forwarding, on the closing date, sufficient funds to satisfy the tax liens to a title company that then issued a title insurance policy showing the property clear of encumbrances other than respondents' vendors' interest; making extensive repairs, still in progress during the suit; and tendering to the bank on February 28, 1980, payments for January, February and March, 1980, and thereafter tendering monthly payments before they were due through the time of trial.

Before appellant made those payments, however, by a February, 1980, letter apparently written when respondents were in Hermiston, respondents closed the escrow account, after appellant had assumed the contract and without notice to appellant, although its assignment was already recorded. On February 21, 1980, the bank wrote to the original buyer to inform him of delinquent payments and of closing the escrow. The bank then refused to accept appellant's payments tendered to the escrow account, so appellant set up another account at that bank to hold the payments until appellant could consult with respondents.

On March 6, 1980, appellant's attorney wrote respondents, informing them of appellant's attempts to cure the defaults and seeking to cooperate with respondents to establish a proper business relationship. Respondents responded on April 14, 1980, by filing this suit, in which they elected to accelerate the contract balance.

Other than the bank's letter of February, 1980, to the original vendee, the only notice of default respondents ever gave to any of the vendees was sometime in 1976, before the original buyer ever assigned his interest. Appellant's predecessors in interest defaulted in payments and in other respects after that; but the bank accepted their late payments; and tax liens existed on the property for three years before appellant assumed the contract.

Respondents argue that foreclosure was proper because the contract was in default when appellant assumed it, that the defaults had not been cured or waived, and that strict foreclosure was proper because appellant had 90 days

after the decree to pay the accelerated unpaid principal together with other costs of suit and costs to cure the defaults.

■　It is true that appellant assumed a contract in default and that by the terms of that contract respondents had the right to elect a remedy, including foreclosure by suit in equity, because the defaults had not been cured within the contract's 10-day grace period. Although they may have waived the time-essence clause by accepting late payments, respondents did not thereby waive their right to elect a remedy for other defaults. They chose to accelerate the principal and to sue in equity for strict foreclosure. Because respondents invoked the court's equity jurisdiction, the issue here is not whether respondents had a *right* to foreclose but whether foreclosure was equitable under the facts of this case.

■ ■　Recently in *Braunstein v. Trottier,* 54 Or App 687, 694, 635 P2d 1379 (1981), we discussed the legislature's abdication to the courts of the responsibility to define rights, duties and interests of parties to land-sale contracts. That case involved a contract with alternative remedies and a 10-day grace period very like the one here; but there the vendors elected forfeiture as their remedy. Oregon courts have traditionally distinguished between forfeiture and strict foreclosure. We did so in *Braunstein;* the Supreme Court did most recently in *Elsasser v. Wilcox,* 286 Or 775, 596 P2d 974 (1979):

> "This court has held in numerous cases that where a contract gives a vendor alternative remedies upon default by the purchaser, notice and an opportunity to cure the default is required by law. * * *" 286 Or at 779. (Citations omitted.)

That appears, perhaps, an overgeneralization of the rule, for the cases cited and there discussed have qualified the rule: when *forfeiture* is an alternative remedy, the contract is not self-executing, and the vendor may not fully exercise the contract right to *forfeiture* unless the vendor gives 1) reasonable notice to the vendee of the vendor's election of *forfeiture* and 2) a reasonable opportunity to cure the defaults. *See Elsasser v. Wilcox, supra,* 286 Or at 779-782, and cases cited therein.

■ That apparent qualification raises the question whether notice and opportunity to cure are required upon the vendor's election of *other* alternative remedies available under a contract. In *Zumstein v. Stockton et ux*, 199 Or 633, 642, 264 P2d 455 (1953), the court noted that "[s]ome action by the vendor would be required to manifest his choice between alternative rights * * *." There the vendor had alternative rights under the contract. Although he elected in his *complaint* to "terminate" the contract, he prayed for a decree for the accelerated principal. He had not given notice before suit. The court treated the suit as one for strict foreclosure rather than for forfeiture and granted the decree for strict foreclosure subject to payment of the accelerated balance. The court noted that pre-forfeiture notice would have been required to manifest an election to forfeit but did not require pre-complaint notice to manifest the election to sue in equity and accelerate the principal. Notice by complaint was apparently sufficient.[1] In their complaint, respondents here declared their election to accelerate the principal balance of the contract. The court so ordered and granted 90 days to appellant to tender the accelerated balance, interest on the late payments and costs and attorneys' fees. In light of *Zumstein* and of appellant's knowing assumption of a defaulted contract, strict foreclosure was a proper remedy.

■ Forfeiture is often considered the harsher remedy and less favored in equity than is strict foreclosure. *See Elsasser v. Wilcox, supra,* 286 Or at 781 n 3 (Justice Howell, speaking for himself only); *Braunstein v. Trottier, supra,* 54 Or App at 692-93, 699. In *Braunstein,* we noted:

"An obvious problem with a summary declaration of forfeiture is that the reasonableness of the time given to

---

[1] In his dissent in *Elsasser,* Justice Holman noted:

"The majority's opinion has a logical result which is not discussed. The rule requires that the purchaser be given an opportunity to *cure the default.* This contract had, in addition to provisions for forfeiture upon notice from the seller and foreclosure by a suit in equity, a provision by which the seller could declare the entire unpaid purchase price immediately due and payable. If notice and opportunity to cure the default are the rights of a purchaser where there are alternative remedies, these rights must also be available whenever an attempt is made to enforce any form of foreclosure which is more stringent, whether it be an immediate forfeiture by notice or *a demand for the payment of the entire purchase price.*" (Emphasis in original.) 286 Or at 786.

cure the default will almost always be open to doubt until a court rules on the question after the fact in the ensuing ejectment proceeding. We are not aware of any guidelines for determining reasonableness. If foreclosure proceedings were required, that problem would not exist; the court could determine what would be a reasonable time within which the vendees must pay up or be foreclosed of any interest in the property (*i.e.,* forfeiture). That is the function of the 'equity of redemption;' it permits judicially determined flexibility to achieve equity under all of the circumstances, as opposed to the vendor's unilateral determination." 54 Or App at 698 n 9.

If, indeed, strict foreclosure is a court-declared "forfeiture" with an equity of redemption, it may be a harsher remedy than forfeiture upon notice and opportunity to cure, if the redemption period is not sufficiently long to allow a financially stable vendee to refinance.[2] *See Zumstein v. Stockton et ux, supra,* 199 Or at 643-44:

"* * * When a plaintiff brings suit for strict foreclosure he submits himself to the jurisdiction of equity and must himself do equity as required by the court. If a vendee who is in arrears *on his payments* has not received sufficient notice prior to the suit for strict foreclosure, it is within the

---

[2] For example, the court here accelerated the principal, *i.e.* granted a contract remedy elected by respondents. The 90 day "grace period" was a redemption period, not time to "cure" under *Elsasser,* because what had to be cured in that time was the *accelerated* principal plus costs and attorneys' fees, *not* past due amounts, taxes, liens, and repairs. Had respondents elected forfeiture, appellant would have been entitled to notice (as it impliedly requested in its attorney's letter of March 6) and to cure existing defaults within a reasonable time. Because respondents elected to accelerate, they must argue that appellant was not entitled to notice of their choice of remedy; that substantial cure of existing defaults before the decree was insufficient to reinstate the contract; and that the only ways to reinstate a contract are to cure before suit, to pay off the contract ("reinstated" by full performance), or to have the court find that respondents waived the defaults. In many cases where Oregon courts have decided against strict foreclosure because the time-essence clause was waived and not reinstated by notice, they have required only "cure" not "redemption"; redemption properly comes after foreclosure, and cure before. *See Grider v. Turnbow,* 162 Or 622, 641, 94 P2d 285 (1939):

"The courts have placed so much emphasis on the necessity of rehabilitating the time-essence clause, when once waived, before a forfeiture may be declared, that the impression is created that a vendor, before declaring a forfeiture, need not give the vendee notice of his intention so to do unless there has been a waiver. Such is not the case. However, there is this distinction: The period of time that would be deemed reasonable notice to the vendee after waiver of the time-essence clause would of necessity be greater than if there had been no such waiver."

power of the court to grant the vendee a reasonable time * * * within which to pay or be foreclosed." (Emphasis supplied.)

■        We find no specific guidelines in statute or case law as to a reasonable time for redemption, but we note that the court in *Zumstein* found one year reasonable when the vendee had made a substantial investment.[3] Appellant here did seek in good faith to cure and made respondents' interest more secure. It appears that appellant is financially stable and responsible and has made a considerable investment.

In view of *Zumstein,* a one-year period for redemption would have been a more appropriate order by the trial court, but in light of the fact that appellant has had the benefit of the time involved in this appeal it is sufficient that appellant have 90 days from the effective date of this decision to redeem. We, therefore, affirm the decree, but modify it to provide that appellant shall have 90 days from the effective date of this decision to redeem.

---

[3] We note that ORS 23.560 provides a one-year redemption period for any mortgage or judgment debtor after foreclosure by sale and regardless of the amount invested. Our courts have not applied ORS 23.560 to strict foreclosure of land-sale contracts, and we do not apply it here.