Argued and submitted November 14, 1983, reversed and
remanded July 11, reconsideration denied September 28,
petition for review allowed October 16, 1984 (298 Or 68)
See 298 Or 383, 692 P2d 597 (1984)

## ESTATE OF BREWER,
*Respondent,*

*v.*

## IOTA DELTA CHAPTER, TAU KAPPA EPSILON FRATERNITY, INC.,
*Defendant,*

## TKE HOUSE FUND, INC.,
*Defendant - Third-Party Plaintiff - Appellant,*

v.

## KREBS et al,
*Third-Party Defendants - Respondents.*

(80-0890-NJ-2; CA A27722)

686 P2d 393

Karen C. Allan, Medford, argued the cause for appellant. With her on the brief was Foster & Purdy, Medford.

Thomas C. Howser, Ashland, argued the cause for respondents. With him on the brief was Cottle & Howser, Ashland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff brought this action to quiet title to real property consisting of a house and lot which plaintiff's decedent previously had sold on a land sale contract to defendant Iota Delta Chapter, Tau Kappa Epsilon Fraternity, Inc. (Chapter). Defendant TKE House Fund, Inc. (House Fund) counterclaimed, contending that, as the holder of an equitable mortgage on the vendee's interest in the property, it is entitled either to judicial foreclosure of that lien or to specific performance of the land sale contract between plaintiff's decedent and Chapter.[1] The trial court granted plaintiff's motion for summary judgment and denied defendant House Fund's similar motion. House Fund appeals from the resulting final judgment quieting title in plaintiff.

The essential facts are not in dispute. On April 28, 1965, Gail and Mildred Brewer, husband and wife, sold the property in question by land sale contract to Eleanor Johnson and Lydia Nissen. After acquiring Johnson's interest, Nissen assigned her vendee's interest to defendant Chapter on June 5, 1972, at which time the unpaid contract balance was $12,196.55. To make the down payment, the Chapter obtained a loan of $9,200 from House Fund. A condition of the loan was that House Fund be given a mortgage on the vendee's interest in the contract. On July 11, 1972, House Fund recorded in the deed records of Jackson County an installment promissory note, dated May 15, 1972, in the amount of $9,200 with interest at 6 percent per annum, to which was attached a legal description of the property. The parties agree that House Fund acquired an equitable mortgage on the vendee's interest by virtue of that documentation and recording.

In April, 1973, Gail Brewer (Mildred Brewer had died earlier) and defendant Chapter entered into an agreement

---

[1] House Fund also asserted a counterclaim, praying that the conveyance by the plaintiff's decedent of the equity interest of the insolvent defendant Chapter be set aside as a fraudulent conveyance. It also asserted two affirmative defenses: (1) plaintiff's filing of suit for strict foreclosure in 1975 constituted an election of remedies barring plaintiff from seeking to quiet title, because those remedies are inconsistent; (2) plaintiff failed to allege compliance with the provisions of ORS 61.530 regarding dissolution of a non-profit corporation.

House Fund cross-claimed against defendant Chapter and brought a third-party complaint against defendants Krebs, Lenchner and Crowley as subsequent purchasers from plaintiff's decedent with notice of House Fund's lien. Given our disposition of the case, we need not decide those questions.

amending their contract to provide that Brewer would loan $3,000 to the Chapter, thereby increasing the unpaid contract balance to $15,563.05. That agreement expressly recognized the interest of House Fund by providing that $2,000 of the loan proceeds would be paid to House Fund "in partial payment of a second mortgage loan on the property * * *."[2]

During 1974, the Chapter was unable to pay its debts, including the contract payments, and in August or September of that year its advisor, Terry Adams, delivered the keys to Brewer and stated that the Chapter would be unable to continue purchasing the property. At that time, Adams gave Brewer the name, address, and telephone number of the person at House Fund with whom Brewer should speak regarding the House Fund's interest in the premises. Brewer took possession of the property and, without contacting House Fund, resold the premises to third-party defendants Krebs on October 1, 1974. On February 19, 1976, Krebs sold the property to third-party defendant Lenchner, who assigned his interest in the contract to third-party defendant Crowley on October 8, 1979.

By letter of September 29, 1975, after Brewer's sale to Krebs, Brewer's attorney, Lombard, notified House Fund of the Chapter's default and asserted that House Fund had no further interest in the property. He also informed House Fund that he was filing a suit for strict foreclosure and requested that House Fund execute a bargain and sale deed relinquishing its interest. That suit was filed in September, 1975; however, it was dismissed without prejudice in December, 1976.

The attorney for House Fund, Leagre, responded to Lombard's letter on November 14, 1975, stating that he was reviewing the law regarding the bargain and sale deed. On January 7, 1976, Leagre asserted the validity of House Fund's equitable lien, and Lombard agreed to provide authority to the contrary. More than a year later, on August 25, 1977, Lombard sent Leagre a legal memorandum outlining Brewer's position,

---

[2] No contention is made that the loan was the equivalent of an additional advance, as a result of which House Fund's equitable lien has priority over that extension of credit by the vendor, which increased the amount of the vendor's lien, *see Braunstein v. Trottier*, 54 Or App 687, 635 P2d 1379 (1981), *rev den* 292 Or 568 (1982), at least to the extent of $1,000. We do not consider that question.

with a letter stating that he was filing a new action to quiet title, which he did on that date. Leagre, in turn, submitted a memorandum to Lombard in October, 1977, and proposed a settlement whereby House Fund would relinquish its interest in the property for $9,200, an amount less than that owing under House Fund's loan to Chapter. That offer was rejected the next month, at which time Lombard requested that House Fund obtain local counsel and appear in the pending quiet title action. House Fund did retain local counsel, who obtained an extension of time within which to appear while the parties negotiated. In February and April, 1978, House Fund made other settlement offers of $9,500 and $9,650 and stated that it would seek specific performance of the Chapter's contract if no settlement was reached. On December 27, 1978, the court dismissed without prejudice the quiet title proceeding for want of prosecution. The present action was filed in March, 1980.

Although the trial court concluded that a vendee, by voluntary relinquishment of its interest to the vendor, may not terminate a mortgagee's interest when the vendor has knowledge of that interest, it found that defendant House Fund had neglected, for an unreasonable and unexplained length of time, to assert its claim of an equitable lien, which resulted in prejudice to plaintiff. The court thus held that House Fund's claim was barred by laches. Plaintiff concedes that the trial court erred in raising and deciding that issue, which was not raised or affirmatively pled by either party as required by ORCP 19B. *See also County of Lincoln v. Fischer et al,* 216 Or 421, 448, 339 P2d 1084 (1959); *Baillie v. Columbia Gold Min. Co.,* 86 Or 1, 38, 166 P 965, 167 P 1167 (1917) (defense of laches is waived unless asserted by litigant entitled to assert it). Given that concession of error, the question remains whether plaintiff was entitled to judgment as a matter of law.

■    The underlying issue is whether the rights of a holder of an equitable lien on the vendee's interest in real property are extinguished when, without more, the vendee has abandoned its interest in the property and the vendor has actual knowledge of the lienholder's interest. As we noted in *Braunstein v. Trottier,* 54 Or App 687, 689, 635 P2d 1379 (1981), *rev den* 292 Or 568, 644 P2d 1129 (1982), because the rights, duties and interests of parties to a land sale contract are, for the most part, creations of the courts, they have evolved piecemeal and

not always harmoniously. The same may be said of cases in which the rights, duties and interests of an equitable lienholder have been discussed. However, to the extent that House Fund claims that it is entitled to judicial foreclosure of its equitable mortgage against the property, that claim may be disposed of summarily. If anything is clear from the cases, it is that the holder of an equitable mortgage on a vendee's interest under a land sale contract has no lien on the property. *Sanders v. Ulrich,* 250 Or 414, 443 P2d 231 (1968); *State Hwy. Comm. v. Demarest,* 263 Or 590, 503 P2d 682 (1972). As a matter of law, plaintiff is entitled to prevail on that claim.

There remains, however, the question whether House Fund is entitled to assert any claims under the land sale contract even though the vendee, its assignor, may not, because the vendee abandoned the property and its contract rights. There are no Oregon cases in point, and the cases dealing with equitable mortgages contain language that appears to create cross-currents. Although all of the cases recognize that an assignment of a vendee's interest given to secure a debt creates an equitable mortgage or lien on the interest assigned in favor of the assignee, it is not clear whether that lien survives after the vendee unilaterally has extinguished its interest. There is no doubt that a vendee's abandonment of the property extinguishes *its* interest in it, *Hull v. Clemens et al.,* 200 Or 533, 267 P2d 225 (1954), or that a vendee who abandons the property is not entitled to notice of default and a defined opportunity to cure before a forfeiture may be effected. *Morgan v. Baunach,* 68 Or App 496, 684 P2d 589 (1984).

It is also clear that, as a general proposition, the holder of an equitable mortgage acquires no greater interest than that of the vendee-mortgagor. *Young v. Clay,* 139 Or 427, 10 P2d 602 (1932). In that case, the court stated that it subscribed to the doctrine set forth in 41 CJ 478, which it quoted:

> " 'A mortgage given by one holding land under an executory contract for the purchase covers his interest, whatever it may be, at the date of the mortgage, giving the mortgagee the right to complete the purchase if his mortgagor refuses to do so; and *the mortgagee cannot be ousted of his rights by a rescission of the contract of sale by the original parties to it.* But the mortgagee will take no other or greater

rights than the vendee had, that is, he will acquire simply a right to purchase the property for the consideration stipulated in the contract of purchase, or to require a conveyance of the estate from the vendor according to the terms of the agreement, on completing the payment of the purchase price. * * *

" 'It is a general rule that, where a mortgage contains full covenants of warranty, a title acquired by the mortgagor after its execution inures to the benefit of the mortgagee and is bound by the mortgage lien.' " 139 Or at 432. (Emphasis supplied.)

Although the emphasized language is *dictum*, taking it at face value it indicates that the court has accepted the proposition that the equitable mortgagee's interest is no less than that of the vendee and, therefore, that the mortgagee may not be deprived of his rights by the unilateral act of the vendee. Stated differently, even though the vendee's rights have been terminated, either voluntarily or by the vendor pursuant to the contract, the vendee's mortgagee continues to have rights under the contract sufficient to protect its security interest, which the vendor may not ignore. Cases in other jurisdictions have adopted that rule. *See Fincher v. Miles Homes of Mo., Inc.,* 549 SW2d 848 (Mo 1977); *Shindledecker v. Savage,* 96 NM 42, 627 P2d 1241 (1981). The facts in *Fincher* are similar to those here. In 1967, the Finchers entered into a land sale contract by which they agreed to sell the Staceys a vacant lot for $1,200 to be paid in installments; the deed was to be delivered on payment of the total purchase price. The contract was not recorded. The Staceys purchased materials for construction of a house on the lot and gave Miles Homes a recorded deed of trust to secure the price. Because the Staceys defaulted in the payments due under the contract, the Finchers terminated their rights, which was evidenced by their acknowledgement of termination on the bottom of the contract of sale. The Finchers acknowledged that they knew of Miles Homes' lien on the property, and a month after the Staceys had relinquished their rights, the Finchers wrote Miles Homes that they had made a deal with the Staceys and that they would like to talk to Miles Homes to "get this worked out if possible." The letter said nothing about an unpaid balance on the lot or terminating the Staceys' interest for default or foreclosing any rights of Miles Homes. The Finchers later instituted a suit to quiet title, claiming that the

surrender of the Staceys' rights had the effect of terminating Miles Homes' rights as well.

The court concluded that Miles Homes' lien rights had not been terminated, because the Finchers had an obligation to notify it of the delinquency that existed and of their intention to forfeit the Staceys' rights under the contract. For that reason the court remanded the case for resolution on equitable principles, stating that Miles Homes was entitled to have its deed of trust foreclosed but also that the plaintiffs should have the option of paying the balance due on the deed of trust. Because the question presented was one of first impression in that jurisdiction, the court reviewed a number of cases from other jurisdictions, including *Young v. Clay, supra.*

Although the language used in *Young v. Clay, supra,* and relied on in *Fincher* is expansive, other Oregon cases contain language that may be viewed as more restrictive. In *Sheehan v. McKinstry,* 105 Or 473, 210 P 627 (1922), a vendor brought a suit for strict foreclosure of the vendee's interest under a contract. The vendee had executed a mortgage in favor of a bank, which was joined as a defendant. In granting strict foreclosure, the court stated:

> "By defendant's partial compliance with and performance of the terms of the contract an equitable interest or estate in the land had become vested in the defendant and this equitable interest or estate was subject to mortgage by him, *but the enforceability of such mortgage, as a lien against the land, depended upon the condition that the contract be kept in force by the subsequent performance of its terms.*" 105 Or at 485. (Emphasis supplied.)

Although plaintiff appears to rely on the emphasized language as requiring that the contract be kept in force by the vendee in order to preserve the equitable lien or, perhaps, that in order for that lien to be effective the vendee must pay off the contract and obtain legal title, we do not view it so broadly. We understand the language to say that, as a general proposition, the contract must be performed by the vendee or the equitable mortgagee in order for the equitable lien to remain viable, and that, in order for the lienholder to have a lien on the *property,* the contract must be fully executed. The court specifically provided in its disposition that either defendant could redeem the property by paying the balance owing within

four months. The equitable mortgagee was protected, notwithstanding the vendee's and the mortgagee's default or the vendee's failure to redeem, so long as the mortgagee redeemed.

Although the cited Oregon authorities do not resolve the issue presented here, we believe that their rationale in recognizing the protectable interest of a mortgagee of a contract vendee's interest leads to the conclusion that House Fund's equitable mortgage could not be extinguished by the mutual cancellation of the contract by the vendor and vendee, or by the unilateral act of abandonment by the vendee, when the vendor had notice (here actual, as well as constructive) of the interest of the equitable mortgagee. Although the vendee may surrender his interest, the equitable mortgagee is entitled, if need be, to step into his shoes and, therefore, is entitled, generally, to the vendee's rights under the contract if he is willing to perform the vendee's obligations thereunder. Under the land sale contract, the vendor had a choice of remedies, including a declaration of forfeiture. In order to effect a forfeiture, plaintiff would have been obligated, but for Chapter's abandonment, to give notice to Chapter of its default and to give it a reasonable time within which to pay the balance due. *Elsasser v. Wilcox,* 286 Or 775, P2d 974 (1979); *Braunstein v. Trottier, supra.* Whether that or some other notice should have been given House Fund remains to be decided.

As indicated above, the reported cases tend to equate the rights of a mortgagee of a vendee's interest with those of the vendee. However, they have done so in contexts different from that presented here—two parties, the vendor with a vendor's lien to secure the purchase price and the equitable mortgagee with a lien to secure payment of a loan. Theoretically, neither party has a right to more than repayment of the amount secured by his respective lien. Yet, in many cases one of them will receive more than is due him, regardless of how we balance their respective rights. If we were dealing with first and second mortgages in a foreclosure, the first mortgagee would be entitled to be paid first from the proceeds derived from an execution sale, the second mortgagee would then be entitled to payment and the balance, if any, would be payable to the mortgagor. Those rules would be applicable if the court in a strict foreclosure action were to order that the property be sold by sheriff's sale, as a matter of equity, or

when the vendor seeks specific performance of the contract, *Renard v. Allen,* 237 Or 406, 391 P2d 777 (1964), and might be applicable in a foreclosure of a lien on the vendee's interest, which *Young v. Clay, supra,* appears to hold may be done. However, an attempt to apply them when, as here, the vendee has voluntarily forfeited its interest in the property and the contract would not work. *But see Fincher v. Miles Homes of Mo., Inc., supra.*

We write on a clean slate and, in doing so, attempt to evaluate the equities of the two parties in an effort to determine what the rights, as between them, should be in this situation. If the equitable lienholder were not in the picture, the vendor could declare a forfeiture of the vendee's interest, accept a voluntary cancellation of the contract or reacquire the property by strict foreclosure. In any such case, the vendor may receive more than the amount owed under the contract. We see no reason why those traditional remedies, at least in concept, should be thrown askew by circumstances over which the vendor has no control, particularly when the party who has intervened in the vendor-vendee relationship has simply loaned money to the vendee and has accepted a lien on the vendee's interest to secure repayment. The lienholder's only valid interest is in being repaid the loan according to its terms and, so long as the traditional rights of the vendor do not cut off that right, they should remain intact. Accordingly, we conclude that, under the circumstances of this case, plaintiff (vendor) was obligated to notify House Fund of Chapter's default and abandonment of the contract and, at his option, either to tender the amount owing to House Fund in return for a satisfaction of its lien, or to advise House Fund of the balance owing under the contract and demand payment within a specified reasonable time, absent which House Fund's interest would be forfeited.

Because plaintiff did not give such notice and opportunity, or make such tender to House Fund, the forfeiture was ineffective as to it. Accordingly, plaintiff may obtain a decree quieting title in it if it tenders the full balance, with interest, owing to House Fund on its lien, or it may seek strict foreclosure, the counterpart of which in this case is House Fund's right to specific performance of the contract, assuming that it is ready, willing and able to pay the contract balance. It has alleged that it is, but because plaintiff's motion for

summary judgment was made and granted on the theory that House Fund was barred as a matter of law from asserting its interest, that question was not before the trial court and is not before us. The trial court erred in granting plaintiff's motion for summary judgment.

Reversed and remanded.