Argued and submitted May 16, at Pendleton, Oregon, affirmed September 18, reconsideration denied November 1, 1985, petition for review denied January 7, 1986 (300 Or 470)

SCHOOL DISTRICT 16-R et al,
*Respondents,*

*v.*

PETERSON,
*Appellant.*

(83-12-1448; CA A32545)

706 P2d 198

Michael J. Morris, Portland, argued the cause for appellant. With him on the brief was Grebe, Gross, Peek, Osborne & Dagle, P.C., Portland.

Douglas E. Hojem, Pendleton, argued the cause for

respondents. With him on the brief was Corey, Byler, Rew, Lorenzen & Hojem, Pendleton.

Before Richardson, Presiding Judge, and Warren and Young, Judges.

RICHARDSON, P. J.

### RICHARDSON, P. J.

Plaintiffs School District 16-R and Webb brought this action, *inter alia*, to remove the cloud that defendant's recording of a property sale agreement and an attached affidavit placed on property which the district sold to Webb.[1] The trial court granted plaintiffs the relief they sought. Defendant appeals, and we affirm.

In November, 1982, the district invited bids for the sale of a junior high school that was no longer needed for school purposes. Defendant was the high bidder and, in January, 1983, the district board accepted his bid of $111,111.11. The district and defendant agreed orally that defendant was to pay 10 percent of the purchase price within the week following the board meeting and the balance within 90 days. Defendant made the down payment. However, in April, 1983, he informed the district that he was having difficulty obtaining funds, and he asked for an additional six months to pay the purchase price. The board agreed to a three-month extension of the time for payment, and the district and defendant executed a property sale agreement, which provided for payment of the balance by July 19, 1983. The agreement contained recitals describing the history of the transaction. It provided that, in the event of defendant's default, the district could seek strict foreclose or could declare a forfeiture.

Shortly before the July payment was due, defendant again notified the district that he was unable to pay, and he requested a further extension. District personnel informed defendant, on the basis of an informal poll of the board members, that it was unlikely that the board would agree to the request. In August, 1983, the board rejected the extension and directed that a notice of forfeiture be sent to defendant.

The board then reopened its invitation for bids. In September, 1983, defendant submitted a bid of $76,000. The district accepted Webb's higher bid. The district's deed to Webb was executed on October 18, 1983.

On September 21, 1983, defendant recorded in the

---

[1] Defendant filed a counterclaim for specific performance *or* rescission. Our disposition of plaintiffs' claim makes it unnecessary for us to address the merits of the counterclaim.

Umatilla County deed records the property sale agreement that the district had declared forfeited the month before. In November, defendant's attorney wrote a demand letter to the district, seeking performance of the agreement or return of the sums defendant had paid the district. The letter was the first relevant communication from defendant to the district since the forfeiture was declared.

Defendant contends that the declaration of forfeiture was invalid, because the district did not first give defendant an opportunity to cure his default. *Elsasser v. Wilcox,* 286 Or 775, 596 P2d 974 (1979); *Braunstein v. Trottier,* 54 Or App 687, 635 P2d 1379 (1981), *rev den* 292 Or 568 (1982). Plaintiffs answer:

> "The May 16, 1983, agreement between plaintiff and defendant was itself an extension of a previously existing contract for the sale of real property between plaintiff as seller and defendant as buyer. Defendant had previously come into default under the terms of the agreement by not making the final payment when due. He then approached plaintiff and asked for an extension of time within which to raise the necessary funds. The May 16 agreement was a memorialization of the agreement by the plaintiff to grant a ninety-day grace period to defendant. Defendant, therefore, was given the necessary opportunity to cure that is required by Oregon common law."

Plaintiffs argue alternatively that defendant "is estopped to claim that the forfeiture was invalid." We agree with plaintiffs' alternative argument, and we adopt the analysis of that argument in the trial judge's memorandum opinion:

> "Defendant acquiesced in the action of the Board in declaring the forfeiture, never raising any objection. In fact, when the property was readvertised for sale, he participated in the bidding. * * * [O]nly after he discovered that he was not the successful bidder the second time, did he assert his present position. This is the perfect situation for the doctrine of estoppel to become applicable. The defendant did nothing when notified of the forfeiture, but accepted it and participated in the new bidding process. Relying on his failure to object to the new bidding caused the School District to become obligated to a new purchaser. By his failure to assert his claim to still having an interest in the property the District changed its position to its detriment by accepting a bid for an amount lesser than that previously made by the defendant. In bidding on the property the second time around, defendant

unequivocally indicated that he made no claim in the property as he is now contending in this case."

Defendant argues that there was no evidence to support a finding that the district relied on and changed its position because of defendant's actions. He states:

"Plaintiffs ask this court to surmise that if defendant had asserted a claim the plaintiff would have acted differently and postponed the second sale. There is no evidence to support such a factual conclusion. Defendant recorded his affidavit [and the agreement] on September 21, 1983. By letter dated October 4, 1983, the District's counsel objected to defendant's recording of the affidavit. Nevertheless, with full knowledge of the fact that the defendant claimed the right to purchase the property, the plaintiffs completed their sale. The District's deed to Webb was not executed until October 18, 1983. In light of the actual events it is ridiculous to suggest that the District would have acted differently if, after notifying defendant of his forfeiture, the District had received objection from defendant."

Defendant misses the point. It was not his failure to object that *alone* gave rise to the estoppel; that failure was conjoined with his participation in the second bid process, which was completely inconsistent with his assertion of any rights under the earlier agreement. Contrary to defendant's understanding, it was not the actual delivery of the deed to Webb that constituted the change in the district's position; it was the completion of the bid process, which obligated the district to deliver the deed ultimately and which occurred before defendant recorded the earlier agreement, that changed the position of the district detrimentally. There was evidence from which the trial court could find, and from which we find on *de novo* review, that the district relied to its detriment on defendant's acts. The trial court did not err by sustaining the forfeiture or by removing the cloud on plaintiffs' title.

■ Defendant also assigns error to the trial court's award of attorney fees to the district, pursuant to the provision for attorney fees in the property sale agreement. Defendant argues that, by declaring the forfeiture and bringing this action, the district disaffirmed the agreement and cannot recover attorney fees under it. However, plaintiffs' claim against defendant was not all that was involved here. Defendant sought the specific enforcement of the agreement

through his counterclaim. *See* note 1, *supra.* An award of attorney fees was therefore proper. *See Anaheim Co. v. Elliott,* 45 Or App 597, 609 P2d 382 (1980).[2]

Affirmed.

---

[2] Defendant does not challenge the amount of the award and does not argue that the services on which the fee was calculated should have been segregated between the prosecution of the claim and the defense of the counterclaim. He argues *only* that the district disaffirmed the agreement and that it therefore was entitled to *no* attorney fees.